In re: John A. CUTIGNOLA and Mary Ann Cutignola, Debtors.

Joseph R. BOLOGNA and Ann Marie Bologna, Plaintiffs,

v.

John A. CUTIGNOLA and Mary Ann Cutignola, Defendants.

Bankruptcy No. 87–1611–9P7.
Adv. No. 87–226.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 29, 1988.

Philip Burnett, Ft. Myers, Fla., for plaintiffs.

Alfred E. Johnson, Ft. Myers, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case, and the matter under consideration is an adversary proceeding filed by Joseph and Ann Marie Bologna (Plaintiffs) against the Debtors, John and Mary Ann Cutignola (the Debtors). The Plaintiffs' complaint sounds in three counts, all of which seek a judgment denying the Debtors their discharge pursuant to § 727 of the Bankruptcy Code. The claim in Count I is based on § 727(a)(4)(A) of the Bankruptcy Code and alleges that the Debtors knowingly and fraudulently made false oaths in or in connection with this case. The claim in Count II is based on § 727(a)(5) of the Bankruptcy Code and alleges that the Debtors have failed to satisfactorily explain the loss of their assets. The claim in Count III is based on § 727(a)(2)(A) and alleges concealment by the Debtors of property of the estate within one year of the date of filing of the Petition with the intent to hinder, delay, or defraud creditors.

The facts relevant to a resolution of this controversy as established at the final evidentiary hearing are as follows:

The Debtors filed their Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code on March 27, 1987. The Statement of Financial Affairs, which was signed under penalty of perjury, reflected that Mr. Cutignola was disabled and Mrs. Cutignola was unemployed, and that the Debtors had received no income from a trade or profession in the two years prior to the filing of the Petition. However, it appears that Mrs. Cutignola had been employed as a swim coach and as a substitute teacher within the year before the filing of the Petition. Mr. Cutignola is in fact disabled and receives workers compensation and social security income in the amount of $2,100.00 per month.

The Statement of Financial Affairs further reveals that the Debtors had only three bank accounts within the two years prior to the filing. However, it is now without dispute that the Debtors had in fact an additional bank account at Southeast Bank, N.A. (Plaintiff's Exh. 10, 11, and 12), albeit with a zero balance on August 25, 1986, but which was active prior to that time. In an attempt to explain his failure to disclose the existence of this account, Mr. Cutignola stated that the account was not in his name individually, but was in his name as Trustee for a party undisclosed in the record. It should be noted that Mr. Cutignola had an unrestricted authority to write checks on the account, and in fact did write out the checks drawn on this account.

On Schedule B–2, the Debtors stated under oath that their Barnett Bank account had a $50.00 balance and their First Federal Savings & Loan Association had a balance of $110.00 at the date of filing. It is undisputed by the Debtors that on the date of filing, the Barnett Bank account had a balance of $945.72 and the First Federal account had a balance of $350.89 (Plaintiffs' Exh. 14).

The Statement of Financial Affairs further reveals that the Debtors stated that they had not received a tax refund during the year immediately preceding the filing of the Petition. In fact, the Debtors now concede that they received a tax refund in the amount of $7,387.64 in May, 1986.

It further appears that at the § 341 meeting of creditors the Debtors were asked whether they had made any purchases of furniture or anything of value within the month prior to the filing of the petition, and the Debtors replied that they had not. Based on the evidence presented at the final evidentiary hearing, it appears that on the contrary, the Debtors purchased furniture costing $2,362.45 one month prior to the filing of the Petition (Plaintiffs' Exh. 18 & 19).

In addition, on May 25, 1985, Mr. Cutignola endorsed a check in the amount of $36,800.00 to Mr. and Mrs. Schwartz, the parents of Mrs. Cutignola. It appears that in late May of 1985 Mr. and Mrs. Schwartz, purchased two CD's in the respective amounts of $34,300.00 and $2,500.00 from Freedom Federal Savings & Loan Association and held these accounts in trust for the Debtors (Plaintiff's Exh. 16). In connection with the purchase of the CD's, the Schwartz's received gifts as a promotion including a grandfather clock, a stereo and a CD system, a VCR, and a TV, all of which were then given to the Debtors (Plaintiffs' Exh. 22). Neither the CD's nor the gifts received, with the exception of the TV, were disclosed by the Debtors on the Statement of Financial Affairs filed by them. The Debtor's explanation for his failure to disclose these certificates is first that he did not learn of the CD's until March of 1987 and second, that as the account was in the name of his father-in-law and he had no access to the money, he thought that disclosure of the CD's was not required by law.

In July of 1986, Mr. and Mrs. Schwartz borrowed $29,043.65 from Freedom Federal and pledged the $34,300.00 CD as partial collateral for the loan (Plaintiffs' Exh. 16). The terms of the loan provided that payments were to be in the amount of $764.83 per month. It is undisputed that the proceeds of the loan were used by the Debtors to fund the down payment on a new home in Bonita Springs, Florida (Plaintiffs' Exh. 10, 22 and 23). The record further reveals that the Debtor borrowed $2,500.00 from the Schwartz's in February 1987 for landscaping on the new home. There is no question that the Debtors made payments in the amount of $764.83 per month, the exact amount of the monthly payment to Schwartzs' on the loan, beginning in August of 1986 to the Schwartz's (Plaintiffs' Exh. 15 and 17). It is undisputed that the repayments made by the Debtors to Mr. Schwartz were not disclosed on the Statement of Affairs (Plaintiffs' Exh. 10 and 11). The Debtors apparently failed to disclose these transactions as they considered the $29,500.00 and the $2,500.00 received from

Mr. Schwartz to be a gift; however, it appears that the Debtors treated the money as a loan as they admitted to have made monthly payments to Mr. Schwartz. However, it is the Debtors' contention that these payments were not made to repay the loan of the $29,500.00, but instead were an installment payment on the purchase of a mink coat owned by Mrs. Schwartz.

It is noteworthy that neither the mink coat nor two other assets undisputedly owned by the Debtors, to-wit: 15 shares of American Telephone & Telegraph stock (Plaintiffs' Exh. 10 and 11) and burial rights were disclosed by the Debtors. In order to explain the unexplainable concerning the mink coat, the Debtors stated that the coat belonged to the Schwartzs' although the Debtors were in the process of purchasing the coat. It appears that the Debtors had possession of the coat for at least several months at one time, although the coat was in the Schwartzs' possession at the time of filing. It was the Debtors' understanding that they would not own the coat until after the $7,000.00 had been paid in full.

In addition, the Debtors did not list a diamond engagement ring on their schedules, but they admitted to ownership of the same at the § 341 meeting. The Debtors explained that they failed to list this asset on their schedules as Mrs. Cutignola had lost the ring approximately one year before the filing of the Bankruptcy Petition, and Mr. Cutignola had replaced it with inexpensive costume jewelry. However, it appears that the Trustee claims to have seen a diamond ring at the Debtors' home after the commencement of the case.

Between February 1, 1987—March 27, 1987, the date the Debtors filed their Petition, the Debtors obtained numerous cash advances totalling $18,259.00 on various credit cards (Plaintiffs' Exh. 10, 11, 13, 14, 20 and 21), which they contend that they used these funds to meet their ordinary living expenses. The evidence presented on this point consisted of bank statements and checks totalling $4,041.67 (Plaintiffs' Exh. 13 and 14) and receipts reflecting that the Debtors had spent $6,145.02 on carpet-

ing and blinds for the new home (Debtors' Exh. 1 and 2). It does appear, however, that the general contractor of the Debtors' new home had written a check to the Debtors in the amount of $1,350.93 for carpeting on February 17, 1987 (Plaintiffs' Exh. 9).

Based on the foregoing facts, it is the Plaintiffs' contention that the Debtors are not entitled to a discharge pursuant to § 727(a)(2)(A), (a)(4)(A) and (a)(5) of the Bankruptcy Code.

§ 727 of the Bankruptcy Code provides in pertinent part as follows:

§ 727. Discharge

(a) The court shall grant the debtor a discharge, unless— ...

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition;

(4) the debtor knowingly and fraudulently, or in connection with the case—

(a) made a false oath or account;

(5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

■ Under § 727 of the Bankruptcy Code, the burden is on the objecting party to prove that the Debtors should be denied their discharge by way of clear and convincing evidence. Bankruptcy Rule 4005; *In re Bernstein*, 78 B.R. 619 (S.D.Fla. 1987). Further, § 727 must be construed liberally in favor of the Debtors and strictly against the creditor. *In re Greenwalt*, 48 B.R. 804 (Bkrtcy.D.Colo.1985).

■ Under § 727(a)(2)(A), the creditor objecting to discharge bears the burden of proving that a debtor has fraudulently concealed property with the intent to hinder, delay or defraud creditors within one year

before filing a petition for bankruptcy. *In re Chalik*, 748 F.2d 616 (11th Cir.1984). The law is well settled that the intent must be actual fraudulent intent. See 4 Collier on Bankruptcy § 727.02[3] (15th Ed.1984), *In re Cycle Accounting Services*, 43 B.R. 264 (Bkrtcy.Tenn.1984), *In the Matter of Brooks*, 58 B.R. 462 (Bkrtcy.W.D.Pa.1986). Therefore, before a Debtor will be denied a discharge under § 727(a)(2)(A), his actual, subjective intent to hinder, delay, or defraud creditors must be demonstrated. In the case at hand, while it is undisputed that the Debtors failed to disclose certain assets, the Plaintiffs have failed to meet their burden of proving that any concealment was done with the requisite fraudulent intent. Based on the foregoing, this Court is satisfied that an objection to discharge under § 727(a)(2)(A) based on a general charge of dishonest behavior, without more, is not sufficient to warrant a denial of discharge.

■ Nevertheless, the Debtors may be denied a discharge where they knowingly and fraudulently made a false oath in or in connection with the bankruptcy case pursuant to § 727(a)(4)(A). The purpose of this section of the Code is to provide the Trustee and creditors with reliable information. *In re MacDonald*, 50 B.R. 255 (Bkrtcy. Mass.1985). However, discharge may not be denied where the untruth was the result of mistake or inadvertence. *Id.* Rather, the false oath must be made intentionally with regard to a matter material to the case. *In re Ellingson*, 63 B.R. 271 (Bkrtcy.N.D.Iowa 1986), or in a manner evidencing a reckless and cavalier disregard for the truth. *In re MacDonald*, *supra*. Further, there is no question that a material omission from the Debtors' schedules signed under penalty of perjury may constitute a false oath. *In re Bobroff*, 58 B.R. 950 (Bkrtcy.E.D.Pa.1986), *aff'd* 69 B.R. 295 (1987).

■ Certainly, when the Debtors signed their Statement of Financial Affairs, they certified that all answers to questions set forth in the statement were true. Based on the evidence, this Court is satisfied that the Debtors' omission of the Certificates of

Deposit, the loan made by Mr. Schwartz and the Debtors' repayment of the same, the American Telephone & Telegraph stock, the burial rights, and the existence of the South East Bank account constituted false oaths made unquestionably with at minimum a reckless disregard for the truth and concerned matters material to this case.

Based on the foregoing, the Court is satisfied that due to the Debtors' false oaths made in this case, they should be denied their discharge pursuant to § 727(a)(4)(A) of the Bankruptcy Code.

Finally, even assuming evidence is insufficient to deny the Debtors their discharge based on § 727(a)(4)(A) of the Bankruptcy Code, this Court is satisfied that a denial of the Debtors' discharge should also be based on the Debtors' failure to satisfactorily explain the loss of their assets. As the Court in *In Re Chalik, supra,* noted (citing *In re Reed,* 700 F.2d 986 (5th Cir.1983):

> "to be satisfying, an explanation must convince the Judge (citations omitted). Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory." 748 F.2d 616 (11th Cir. 1984).

The only explanation offered at trial by the Debtors was that the $18,259.00 received from cash advances in cash was used for one month's living expenses and a carpeting bill. However, coupled with the Debtors' monthly income, these expenses do not begin to meet the cash advances after the Debtor allegedly paid the bill. Therefore, denial of the Debtors' discharge is also warranted on this ground.

Based on the foregoing, this Court is satisfied that the Plaintiffs are entitled to a Judgment denying the Debtors their discharge pursuant to § 727(a)(4)(A) and (a)(5) of the Bankruptcy Code.

A separate Final Judgment will be entered in accordance with the foregoing.