HOBBS, Senior District Judge:
 

 In this bankruptcy appeal appellant Marian Wines contests the district court's holding that: (1) the release of collateral without reservation of rights discharged appellee Fred Wines’ $83,261 guaranty; (2) the evidence did not support a finding of fraudulent transfer; and (3) Fred Wines did not make a false oath in scheduling his assets. We affirm.
 

 I. FACTS
 

 In 1980, after thirty years of marriage, Marian Wines (“Claimant”) and Fred Wines (“Debtor”) were divorced in Minnesota. As part of the marital property settlement, Claimant received 500 shares in Advanced-
 
 *729
 
 United Expressways, Inc. (“Advanced”), a corporation in which the Debtor was a director and large shareholder.
 

 In 1985 Claimant sold her 500 shares of Advanced stock to Advanced-United Enterprises, Inc. (“Enterprise”) for $1,600,000. Claimant received $370,000 at the time of the sale with the $1,230,000 balance secured by a promissory note executed by Enterprise in Claimant’s favor for that amount. The note was secured by a first mortgage on real property owned by Advanced. The Debtor was not personally obligated under either the note or the mortgage.
 

 In 1987, Enterprise requested an extension of time to pay Claimant the second $200,000 installment payment due on January 1, 1987. The parties reached an extension agreement whereby Enterprise would pay the Claimant the second installment in five partial payments over a three month period. The Debt- or executed a guaranty for repayment of the second installment only.
 

 Enterprise made the first four of the five partial payments, which totaled $150,000, but failed to make the fifth partial payment of $83,261 ($50,000 plus $33,261 in interest) due on March 31, 1987. As a result of its failure to make the fifth partial payment, Enterprise defaulted on the entire note. On September 25, 1987, Advanced, the mortgagor, filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Minnesota.
 

 Advanced’s Minnesota Bankruptcy Proceedings
 

 Claimant filed a proof of claim in Advanced’s Chapter 11 proceedings seeking to obtain full payment of the entire secured claim, which included the portion of the indebtedness guaranteed by the Debtor. On July 10,1989, the bankruptcy court approved a settlement agreement between Claimant and Advanced.
 

 Pursuant to the agreement, Claimant agreed to release Advanced from all liability under the note and mortgage in exchange for $765,000
 
 [1]
 
 cash as payment of the principal due under the mortgage. As part of the court approved settlement agreement, Claimant also received an unsecured and subordinated claim against Advanced for $635,000, which represented the balance on the released mortgage.
 

 When the Claimant released Advanced’s mortgaged collateral, she did not reserve rights against Enterprise or the Debtor. Advanced subsequently sold the mortgaged property for $1,500,000.
 
 [2]
 

 Fred Wines’ Florida Bankruptcy Proceedings
 

 In September, 1989, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida. On December 15, 1989, Claimant filed a complaint seeking to deny the Debtor’s discharge under 11 U.S.C. §§ 727(a)(2)(A) and (a)(4)(A). Then, on January 17,1990, Claimant filed a proof of claim which notified the Debtor of her intention to apply her $765,000 cash settlement to the portion of the Enterprise loan not guaranteed by the Debtor.
 

 II. JURISDICTION AND STANDARDS OF REVIEW
 

 The district court had jurisdiction under 28 U.S.C. § 158(a). This Court has jurisdiction pursuant to 28 U.S.C. § 158(d). We review the district court’s factual findings for clear error and the district court’s determinations of law
 
 de novo. In re Sublett,
 
 895 F.2d 1381, 1383 (11th Cir.1990).
 

 III. DISCUSSION
 

 A. The Guaranty
 

 The overarching issue in this appeal is whether Fred Wines is discharged from the January 1987 payment which he unconditionally guaranteed. The bankruptcy court concluded that Fred Wines’ obligation as an unconditional guarantor was unaffected by
 
 *730
 
 the settlement agreement between Advanced and Marian Wines and that he therefore remained liable for the outstanding balance of $83,261. 114 B.R. 794. The district court reversed emphasizing that Marian Wines released collateral sufficient to satisfy the entire indebtedness without reserving her rights against the Debtor.
 

 Relying on section 524(e) of the Bankruptcy Code, Claimant contends that the Debtor, as an unconditional guarantor, is liable for the unpaid portion of the debt.
 
 [3]
 
 The Debtor, on the other hand, citing section 3-606(1)
 
 [4]
 
 of the Uniform Commercial Code and
 
 Restatement of Security
 
 § 122 (1941),
 
 [5]
 
 maintains that the release of collateral without reservation of rights discharged his obligation under the general laws of suretyship. Each of these conflicting rules respectively guided the divergent decisions of the bankruptcy and district courts.
 

 We are particularly impressed by the fact that Marian Wines waited more than six months
 
 [6]
 
 after release of the mortgaged collateral before notifying Fred Wines, in the form of a proof of claim filed against his bankruptcy estate, that she would allocate the $765,000 cash received under the settlement agreement in Advanced’s bankruptcy against the portion of the Enterprise loan not guaranteed by Fred Wines.
 

 The applicable rule on the issue of allocation states:
 

 where neither the principal nor the creditor seasonably manifests an intention as to the application of a payment, the payment is applied in the way most favorable to the creditor, unless under the circumstances such an application would violate a right of the surety, the principal, or another to a more equitable application.
 

 Restatement of Security
 
 § 142(e) (1941).
 

 The rule stated in this clause is substantially that stated in section 260(1) of the
 
 Restatement (Second) of Contracts
 
 (1981):
 

 If neither the debtor nor the creditor has exercised his power with respect to the application of a payment as between two or more matured debts, the payment is applied to debts to which the creditor could have applied it with just regard to the interests of third persons, the debtor and the creditor.
 

 Put briefly, if a creditor fails to designate within a reasonable time how payment is to be applied, the court may allocate the payment in an equitable manner.
 
 First Nat’l Bank in Palm Beach v. United States,
 
 591 F.2d 1143, 1147 (5th Cir.1979);
 
 see also In re Comer,
 
 716 F.2d 168, 175 (3d Cir.1983);
 
 In re Securities Groups,
 
 116 B.R. 839, 845 (Bankr.M.D.Fla.1990). Half a year after Marian Wines received the $765,000 cash settlement from Advanced’s bankruptcy, she elected to treat the $765,000 as not applicable to the $50,000 partial payment Fred Wines had guaranteed. This interval was an unreasonable period of time in which to designate payment allocation.
 

 In deciding that equitable principles favor allocation of Marian Wine’s cash settlement toward that portion of the Enterprise loan guaranteed by Fred Wines, we do not mean to express disagreement with the district court’s holding that Marian Wines’ unreserved release of Advanced’s mortgaged collateral discharged Fred Wines’ $83,261 surety obligation. That holding was derived from law well settled. Instead, we simply empha
 
 *731
 
 size that creditors in Marian Wines’ position should not have it both ways. After delaying her decision, Marian Wines turned around to declare that she would allocate the $765,000 payment in such a way as to allow her to still pursue an obligation which her former husband, as guarantor, had good reason to believe was discharged. Under these circumstances, it would be patently unfair to charge the bankrupt ex-husband with such a claim.
 

 B. Fraudulent Transfer
 

 Six months prior to his chapter 7 petition, Fred Wines transferred to Randee Wines, whom he married after divorcing Marian Wines, the right to acquire 26% of the stock which United Shipping Company (“USC”), a Chapter 11 debtor-in-possession, proposed to issue under its plan of reorganization. Marian Wines contends that pursuant to 11 U.S.C. §
 
 727(a)(2)(A)
 

 [7]
 

 Fred Wines’ discharge from bankruptcy should be denied because the transfer to Randee Wines was a fraudulent conveyance made within one year of the bankruptcy petition. Both the bankruptcy and the district court concluded that the transfer was not fraudulent and, therefore, declined to deny the Debtor’s discharge from bankruptcy.
 

 In order to deny a bankruptcy discharge, evidence of actual intent to defraud creditors must be shown.
 
 In re Reed,
 
 700 F.2d 986, 991 (5th Cir.1983); 4
 
 Collier on Bankruptcy,
 
 ¶ 727.02[3] at 727-15 (Lawrence P. King ed., 15th ed. 1993). Whether the debtor had the requisite wrongful intent is a question of fact which we review for clear error.
 
 In re Reed,
 
 700 F.2d at 992.
 

 At trial, Marian Wines had the initial burden of proving her objection to Fred Wines’ bankruptcy discharge.
 
 See In re Chalik,
 
 748 F.2d 616, 619 (11th Cir.1984) (citing Bankruptcy Rule 4005). The only evidence of actual fraudulent intent that Marian Wines produced were statements made by Randee Wines in the course of settlement negotiations conducted by telephone. These statements were held inadmissible by the bankruptcy court under rule 408 of. the Federal Rules of Evidence (evidence of statements made in compromise negotiations is inadmissible).
 

 The bankruptcy court’s factual findings, affirmed by the district court, must be accepted by us unless they are clearly erroneous.
 
 Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,
 
 458 U.S. 50, 56 n. 5, 102 S.Ct. 2858, 2863 n. 5, 73 L.Ed.2d 598, 605 n. 5 (1982). “When the district court has affirmed the bankruptcy court’s findings_we will apply the clearly erroneous doctrine with particular rigor.”
 
 In re Jet Florida Systems, Inc.,
 
 861 F.2d 1555, 1558;
 
 see also In re Garfinkle,
 
 672 F.2d 1340, 1344 (11th Cir.1982) (strict application of clearly erroneous doctrine paramount when district court affirms bankruptcy court’s findings). Here, we are unable to say that the bankruptcy court’s finding that Fred Wines made the stock transfer to Randee Wines without actual intent to defraud .Marian Wines was clearly erroneous.
 

 C. Schedule Discrepancy
 

 Seeking a denial of the Debtor’s discharge under 11 U.S.C. § 727(a)(4)(A),
 
 [8]
 
 Marian Wines contests the district court’s holding that evidence was insufficient to support her charge that the Debtor made a false oath in valuing certain assets in his chapter 7 schedules. Her challenge is predicated on a loan made by the Debtor to USC. At the time USC filed for bankruptcy the outstanding balance due on the loan, reflected by a proof of claim the Debtor filed against USC, was $381,450. Claimant contends that the Debtor’s valuation of the loan — listed in his bankruptcy schedule as a $12,000 asset — was so “grossly incorrect” as to constitute a false oath. Five months after the Debtor’s alleged undervaluation of his claim, it was predicated at trial in the bankruptcy court that the claim’s probable distribution would be ap
 
 *732
 
 proximately $32,500. The bankruptcy court concluded that the Debtor’s undervaluation did not warrant the denial of his discharge. The district court affirmed.
 

 Absent clear error, we will not disturb the factual findings of the district court.
 
 Northern Pipe Line Construction Co.,
 
 458 U.S. at 56 n. 5, 102 S.Ct. at 2863 n. 5, 73 L.Ed.2d at 605;
 
 In re Sublett,
 
 895 F.2d at 1383. Based on our review of the record, we see no clear error to warrant setting aside the finding of the bankruptcy court and the district court that the Debtor did not make a false oath.
 
 [9]
 
 These courts found correctly that no evidence suggested that Fred Wines deceived his creditors. The district court was impressed that the Debtor’s subsequent correction to the scheduled amount and explanation to the bankruptcy trustee at a 11 U.S.C. § 341 creditors’ meeting demonstrated a
 
 bona fide
 
 effort to value his assets.
 

 IV. CONCLUSION
 

 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 

 [1]
 

 . This cash payment was more than adequate to satisfy the $83,261 balance due under the second installment payment.
 

 [2]
 

 . Marian Wines admitted at trial that when she released the collateral she knew that the mortgaged property would be sold for $1,500,000. This amount would have more than satisfied Claimant’s secured claim of $1,208,164.90.
 

 [3]
 

 . 11 U.S.C. § 524(e) provides that:
 

 discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.
 

 [4]
 

 . U.C.C. § 3-606(1) states:
 

 The holder discharges any party to the instrument to the extent that without such party's consent the holder (a) without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse....or (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
 

 [5]
 

 . That section provides in part:
 

 Where the creditor releases a principal, the surety is discharged unless,
 

 (b) the creditor in the release reserves his rights against the surety.
 

 [6]
 

 . The bankruptcy court in Minnesota approved the parties’ settlement on July 10, 1989. Marian Wines filed a proof of claim against Fred Wines on January 17, 1990.
 

 [7]
 

 . Section 727(a)(2)(A) provides that a debtor shall receive a discharge unless, with intent to hinder or defraud a creditor, he or she transferred "[p]roperty of the debtor ... within one year before the filing of the petition.”
 

 [8]
 

 . 11 U.S.C. § 727(a)(4)(A) states that a debtor shall be granted a discharge, unless he “knowingly and fraudulently, in or in connection with the case — made a false oath or account.”
 

 [9]
 

 . In reaching this conclusion, the district court observed that Fred Wines' mental state militated against a finding that he intended to deprive the bankrupt estate of any assets. Fred Wines, now deceased, was a paraplegic who suffered from temporary memory loss due to medication he took for an arrhythmic heart condition.