[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 23, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14998
Non-Argument Calendar

_____

D. C. Docket No. 06-00526-CV-ORL-31-DAB
BKCY No. 04-11013-BK-KSJ

In Re: WALLACE M. RUDOLPH,

Debtor,

_____

JOHN M. KEEFE,

Plaintiff-Appellant,

versus

WALLACE M. RUDOLPH,

Defendant-Appellee,

KENNETH C. MEEKER,

Trustee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 23, 2007)

Before DUBINA, BLACK and MARCUS, Circuit Judges.

PER CURIAM:

Appellant John M. Keefe, an attorney proceeding *pro se*, appeals the district court's order affirming the bankruptcy court's judgment denying his claim that the debt owed by his former client, Wallace M. Rudolph, was non-dischargeable.

"In reviewing bankruptcy court judgments, a district court functions as an appellate court." *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993). It reviews the bankruptcy court's legal conclusions *de novo*, but must accept the bankruptcy court's factual findings unless they are clearly erroneous. *Id*. In turn, we independently examine the bankruptcy court's factual findings for clear error and review *de novo* the legal determinations of both the bankruptcy and district courts. *Id*. Neither we nor the district court may make independent factual findings. *Id*. "If the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings." *Id*. We review a bankruptcy court's consideration of a summary judgment motion *de novo*. *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334-35 (11th Cir. 2001). We review a district court's denial of a motion to compel discovery for an abuse of discretion. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 837 (11th Cir. 2006). Issues not raised clearly on appeal are abandoned.

2

*In re Securities Group 1980*, 74 F.3d 1103, 1114 (11th Cir. 1996). *Pro se* pleadings are construed liberally. *See In re Wrenn*, 791 F.2d 1542, 1543 (11th Cir. 1986).

An individual debtor's pre-bankruptcy debts are generally dischargeable in a Chapter 7 bankruptcy case. 11 U.S.C. § 727(a), (b). "Moreover, courts generally construe the statutory exceptions to discharge in bankruptcy 'liberally in favor of the debtor,' and recognize that '[t]he reasons for denying a discharge . . . must be real and substantial, not merely technical and conjectural.'" *In re Miller*, 39 F.3d 301, 304 (11th Cir. 1994) (quoting *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987)).

> At trial, the party objecting to a discharge has the burden of proving the objection. But once that party meets the initial burden by producing evidence establishing the basis for his objection, the burden shifts to the debtor to explain satisfactorily the loss. Vague and indefinite explanations of losses that are based upon estimates uncorroborated by documentation are unsatisfactory. To be satisfactory, an explanation must convince the judge. The question of whether a debtor satisfactorily explains a loss of assets is a question of fact.

*In re Chalik*, 748 F.2d 616, 619 (11th Cir. 1984) (citations and internal quotation omitted).

## A.  11 U.S.C. § 523(a)(2)(A)

Keefe argues that Rudolph's $31,250 debt to him was non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Keefe contends that Rudolph was able to pay

3

Keefe for his legal services at the time of their fee agreement. Further, Rudolph repudiated the fee agreement without notice to Keefe after receiving legal services. Keefe argues that Rudolph made material misrepresentations to Keefe about payment but only intended to pay Keefe $4,000 to $5,000. Moreover, Rudolph did not inform Keefe of this intent until he sent him a release in September 2001 for $4,000. Keefe argues that the bankruptcy court clearly erred because its factual findings are silent as to whether this evidence establishes Rudolph's intent to defraud Keefe. Keefe finally argues that he relied on his relationship with Rudolph and incurred a loss; therefore, Rudolph's debt was non-dischargeable.

For a debt to be excepted from discharge based on fraud, under 11 U.S.C. § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: " (1) the debtor made a false representation with the purpose and intention of deceiving the creditor; (2) the creditor relied on the representation; (3) the creditor's reliance was reasonably founded; and (4) the creditor sustained a loss as a result of the representation." *In re Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).

After reviewing the record, we conclude that the bankruptcy and district courts did not err in determining that Keefe failed to carry his burden in showing that Rudolph's debt was non-dischargeable under § 523(a)(2)(A). Keefe cannot show that Rudolph made a false representation with the purpose and intention of

4

deceiving him. Rudolph regularly paid Keefe for his services beginning in 1997 and had paid him approximately $19,000 during the course of their relationship. When Rudolph asked that Keefe take steps to protect promissory notes issued by Empirical Research Systems, Inc., ("ERSI"), he only intended to spend approximately $5,000. When Rudolph realized that his legal bills had grown to nearly $28,000, he tried to settle the bills for $4,000. Rudolph's earlier payments of his legal bills do not constitute false representations to Keefe, but rather timely payment for Keefe's earlier litigation services. Further, Rudolph's stated intention to pay only a certain amount for the ERSI promissory notes litigation does not show that he intended to deceive Keefe into performing legal services without payment. Rather, such statements reflect what Rudolph believed to be a fair price for such services. Keefe admitted that his relationship with Rudolph was largely informal and that Randolph incurred most of the legal fees before the September 3, 2001, fee agreement. Keefe points to no evidence in the record showing that Rudolph made a false representation, or that Rudolph acted with the intent to deceive him.

**B.  11 U.S.C. §§ 727(a)(2)(A), (a)(3)**

Keefe also argues that a preponderance of the evidence showed that the bankruptcy court should have denied the discharge of Rudolph's debts under 11

U.S.C. § 727(a)(2)(A), (a)(3). Keefe claims that the bankruptcy court's findings of fact concerning Rudolph's wife's income were insufficient. Further, because Rudolph had an extensive educational and business background, his inability to produce records of his business transactions bars discharge under 11 U.S.C. § 727(a)(3). Keefe claims that the bankruptcy court clearly erred by failing to determine whether $26,700 that Rudolph's wife deposited in a Wachovia account was her income, which was required to be disclosed. Keefe argues that by failing to disclose evidence of the University of Orlando settlement in the bankruptcy schedules, and by hiding the information from the trustee and creditors, Rudolph knowingly concealed the property with the intent to defraud Keefe under § 727(a)(2).

A bankruptcy court will grant a debtor a discharge of a debt unless the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. 11 U.S.C. § 727(a)(3).

As an initial matter, we will not consider Keefe's claim under § 727(a)(2)(A) because he failed to challenge the bankruptcy court and district court's refusal to

6

consider that claim. The bankruptcy court did not consider Keefe's § 727(a)(2)(A) claim because he did not plead it in his complaint. The district court did not appear to consider the claim as well. Although we construe *pro se* pleadings liberally, because Keefe is an attorney and fails to address directly the bankruptcy and district courts's rulings on the § 727(a)(2)(A) claim, we deem this claim abandoned.

The bankruptcy and district courts did not err in finding that Keefe failed to show that Rudolph concealed or failed to preserve records of his financial condition. Rudolph admitted his original petition for bankruptcy was not perfect. Rudolph amended the petition several times to reflect that (1) his suit against ERSI for the promissory notes was dormant; (2) he had received a distribution from the partnership; (3) he traded his defective Honda CRV for a Honda Odyssey; and (4) he disclosed the value of his TIAA-CREF pension accounts. Although Rudolph's documents were often filed late, he ultimately provided the requested and required documents, including the settlement agreement with the University of Orlando. Rudolph failed to provide documentation showing his $900 in income derived from his wife's LSAT business in 2005, but the bankruptcy court did not clearly err by finding that this income was adequately explained and *de minimis* in nature.

Rudolph reasonably explained that he earned this relatively small amount of money working as a consultant for his wife's business. Finally, no part of the petition required Rudolph to list his wife's Wachovia deposits. Keefe fails to point to any evidence in the record establishing that Rudolph concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information.

**C. 11 U.S.C. § 727(a)(4)**

Keefe also claims that the bankruptcy court erred by denying his request for discharge under § 727(a)(4). Keefe claims that Rudolph knowingly and fraudulently made a false account by omitting the ERSI notes from his petition. Keefe points out that Rudolph also omitted (1) payments to Wells Fargo; (2) a down payment on a new vehicle; (3) his $6,750 partnership distribution; (3) six active credit cards; and (4) his settlement of his debt to William O'Grady.

Courts will not grant a discharge if the debtor knowingly and fraudulently, in connection with the case, made a false oath or account. § 727(a)(4)(A). "To justify denial of discharge under § 727(a)(4)(A), the false oath must be fraudulent and material." *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991). "Deliberate omissions by the debtor may also result in the denial of a discharge." *Chalik*, 748 F.2d at 618. False oaths regarding worthless assets can still bar

discharge of debts. *Id.* Discharge may not be denied where the untruth was the result of mistake or inadvertence. *In re Cutignola*, 87 B.R. 702, 706 (Bankr. M.D. Fla. 1988). "Rather, the false oath must be made intentionally with regard to a matter material to the case." *Id.*

The debtor in *In re Wines*, 997 F.2d 852, 856-857 (11th Cir. 1993), listed a loan that he made to a third party on his bankruptcy petition as being worth $12,000. A creditor challenging the discharge argued that the debtor undervalued the loan on the application and provided evidence to show that the loan was really for $381,450. *Id.* The debtor corrected the scheduled amount of the loan and explained the discrepancy. *Id.* at 857. We affirmed the bankruptcy court's holding that the undervaluation was not a false oath. *Id.* In *Cutignola*, a bankruptcy court found that the debtor falsely omitted a checking account because it had a zero balance. 87 B.R. at 704, 706. The bankruptcy court denied the discharge based on this and several other significant omissions and false statements regarding undisclosed loans of $29,043, and $36,800 held in trust for the debtors by a parent. *Id.* at 705, 706.

After reviewing the record, we conclude that the bankruptcy and district courts did not err in determining that Keefe failed to show that Rudolph knowingly

and fraudulently made a false oath or account. Rudolph made several significant omissions in his petition. Rudolph should have listed his interest in the ERSI notes in the petition because their lack of value was immaterial.

Keefe fails, however, to show that any of these omissions were fraudulent. Rudolph amended his petition to reflect several of these debts. Rudolph also provided explanations for, or admitted a lack of knowledge of, several of these omissions. Additionally, Keefe does not show that the bankruptcy court clearly erred by determining that Rudolph was a credible witness. Rudolph should have listed the credit cards with zero balances, but unlike the debtors in *Cutignola*, there is no other evidence that Rudolph concealed assets. Like the debtor in *Wines*, Rudolph made several significant omissions in his bankruptcy forms, but he provided explanations and amended his petition to remedy most of them. The record lacks any evidence that Rudolph acted fraudulently in omitting information from his petition; therefore, the bankruptcy court did not err in discharging his debts under § 727(a)(4)(A).

## D. Conversion to a Chapter 13 Proceeding and Various Motions

Keefe argues that Rudolph's case should be converted into a Chapter 13 proceeding. Keefe also claims that his motions for summary judgment and to

compel discovery should have been granted.

A bankruptcy court may not convert a case under Chapter 7 to a case under Chapter 13 unless the debtor requests such a conversion. 11 U.S.C. § 706(c). (2004).[1]

The record demonstrates that Rudolph never requested that his petition be converted to a Chapter 13 proceeding, so Keefe's argument is meritless. Further, the bankruptcy court did not abuse its discretion when it determined that Keefe had an ample amount of time to conduct the necessary discovery. Lastly, the bankruptcy court's trial made Keefe's motion for summary judgment moot. Accordingly, we affirm the district court's order affirming the bankruptcy court's judgment.

**AFFIRMED.**

---

[1]The current version of 11 U.S.C. § 706(c) allows conversion if the debtor requests or consents to it. It does not apply to cases filed before April 20, 2005, so it does not apply here. 11 U.S.C. § 706 (2005).