[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13790
Non-Argument Calendar
_____

D.C. Docket Nos. 9:17-cv-81323-KAM,
9:15-bkc-20883-PGH

In Re: WANDA WHIGHAM,

Debtor.
_____

WANDA WHIGHAM,

Plaintiff-Appellant,

versus

UNITED ASSET HOLDINGS RESIDENTIAL, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 10, 2019)

Before JORDAN, JILL PRYOR and BLACK, Circuit Judges.

PER CURIAM:

Wanda Whigham appeals the district court's order affirming the bankruptcy court's amended order denying her Chapter 7 discharge, pursuant to 11 U.S.C. § 727(a), following a creditor's filing of an adversary proceeding. Whigham asserts the district court erred in affirming the factual findings of the bankruptcy court. After review, we affirm.[1]

## I.  BACKGROUND

On June 16, 2015, Whigham filed a voluntary Chapter 7 bankruptcy petition. In her "Statement of Financial Affairs" filed in the bankruptcy court, Whigham disclosed she had received a "2013 lawsuit settlement" in the amount of $245,000.00 (the Settlement Proceeds).

In August 2015, one of Whigham's creditors, United Asset Holdings Residential, LLC (United Asset), and the trustee in bankruptcy conducted an examination of Whigham, pursuant to Federal Rule of Bankruptcy Procedure 2004, during which Whigham was questioned about the disposition of the Settlement

---

[1] Also pending before this Court is Whigham's motion for sanctions against Appellee and Appellee's counsel, pursuant to Federal Rule of Appellate Procedure 38.  She asserts Appellee has knowingly endorsed the bankruptcy court's clearly erroneous findings and failed to disclose it was administratively dissolved in September 2017 by the Florida Division of Corporations.  In light of our decision to affirm, and because Appellee's status as a dissolved entity under Florida law does not preclude it from winding up its affairs, we deny Whigham's untimely motion for sanctions.

Proceeds.  Whigham testified she received a net amount of $200,000.00 from the Settlement Proceeds in June 2013 (after deducting $45,000.00 in attorney's fees), $75,000.00 of which she immediately deposited in a new account at PNC Bank. As to the remaining $125,000.00, Whigham testified she obtained a single cashier's check from PNC, made payable to herself, in order to pay various "outstanding bills."  She then took the cashier's check to Citibank—an institution with which she had a preexisting relationship—which issued her a series of cashier's checks made payable to various creditors she needed to pay.

At the time of the Rule 2004 examination, Whigham was unable to recall all of the specific creditors she paid out of the $125,000.00, nor could she produce copies of the cashier's checks, but she maintained "all the creditors that were paid would have equaled that amount."  The trustee asked Whigham to produce copies of the cashier's checks within ten days following the examination because "right now there is not a complete explanation of the $125,000.00" and "where that money actually went."  Whigham agreed.

When Whigham failed to produce the requested documentation, United Asset filed an adversary proceeding against her, seeking to deny her a discharge on several grounds.  United Asset also subpoenaed Citibank, seeking copies of any cashier's checks Whigham purchased from Citibank in June 2013.  Citibank responded by producing copies of only two cashier's checks from that time—one

3

of which was made payable to Whigham's son—totaling around $9,000.00. Based in part on this discovery, United Asset moved for summary judgment on its adversary complaint.

In February 2016, prior to responding to the motion for summary judgment, Whigham filed an affidavit purporting to lay out in detail what became of the $125,000.00 in Settlement Proceeds. The affidavit contradicted Whigham's prior testimony that the amount in question was used entirely to pay outstanding creditors in June 2013. In particular, the affidavit indicated Whigham had deposited a large portion of the funds into a previously undisclosed Citibank account she held in trust for her son (the Citibank ITF Account). In her subsequent verified response to the motion for summary judgment, Whigham stated she was at some point "reminded" of the Citibank ITF account, which remained open and into which she had deposited $105,000.00 of the Settlement Proceeds throughout June and July of 2013.

In light of these additional disclosures, United Asset filed an amended adversary complaint, again seeking to deny Whigham discharge. Following a trial, at which Whigham was the only witness, the bankruptcy court entered an amended order denying Whigham discharge on three grounds, all of which concerned her failure to timely and accurately account for the dispersal of the Settlement

4

Proceeds.[2]  Specifically, the court found she: (1) concealed and failed to maintain adequate records, which made it impossible to ascertain her true financial condition; (2) made a false oath or account that was both fraudulent and material, and withheld recorded information relating to her property or financial affairs; and (3) failed to explain satisfactorily her loss of assets.  Whigham appealed, and the district court affirmed, finding no clear error in the bankruptcy court's factual findings.  The instant appeal followed.

## II.  ANALYSIS

As the second court of review in bankruptcy cases, we examine the judgment of the bankruptcy court independently of the district court.  *Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.)*, 680 F.3d 1298, 1310 (11th Cir. 2012).  We review the bankruptcy court's findings of fact for clear error and its legal determinations *de novo*.  *Id.*  "The factual findings of the bankruptcy court are not clearly erroneous unless, in the

---

[2] The district court reversed the bankruptcy court's initial judgment denying discharge and remanded the case for the issuance of a new decision removing from consideration an erroneous finding that United Asset's claim was secured by Whigham's homestead, as opposed to an investment property, and that Whigham's debts were primarily consumer.  Upon remand, the bankruptcy court issued an amended order, in which it clarified this finding was immaterial to its decision to deny discharge.  Whigham devotes significant time on appeal discussing this error in the bankruptcy court's original order.  However, because the finding was not material to the bankruptcy court's denial of discharge, it is not relevant to our review of the bankruptcy court's decision.

light of all the evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks omitted).

Whigham argues the district court erred in affirming the bankruptcy court's ruling denying her a discharge pursuant to sections 727(a)(3), (a)(4), and (a)(5).[3] A finding against Whigham under any single subsection of section 727 is sufficient to deny her a discharge. *See generally* 11 U.S.C. § 727. We will consider each subsection in turn.

## A. Section 727(a)(3)

Pursuant to section 727(a)(3), a court shall grant a debtor discharge unless the debtor "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

---

[3] Whigham also argues extensively that the bankruptcy court was precluded from denying her discharge under sections 727(a)(3) and (a)(5) because, in denying United Asset's motions for summary judgment—as to both its original and amended adversary complaints—it noted Whigham had come forth with sufficient details concerning the disposition of the Settlement Proceeds. Whigham cites no support for her assertion that statements in the bankruptcy court's summary judgment orders are entitled to preclusive effect. Moreover, as the district court noted, this argument misunderstands the standard applied to summary judgment motions. As the bankruptcy court's orders themselves stated, the court was required to construe all evidence in the light most favorable to the non-movant (Whigham) and resolve all reasonable inferences in her favor. The bankruptcy court's conclusion that Whigham had produced evidence sufficient to create an issue of fact as to whether denial of discharge was warranted in no way precluded the court from resolving that issue of fact against her following trial.

The bankruptcy court found Whigham had concealed the Citibank ITF Account into which a significant portion of the Settlement Proceeds was deposited, and had failed to maintain adequate records concerning the dispersal of the Settlement Proceeds.  We conclude the bankruptcy court did not commit clear error.

As to the concealment of the Citibank ITF account, Whigham failed to list the account on her petition or schedules, and further failed to disclose the account during her examination when questioned about the existence of any other accounts. Whigham has asserted, both at trial and on appeal, that her failure to disclose the account was inadvertent, and, in any case, she was under no obligation to disclose the existence of the account because it was held "in trust for" her son and did not contain any of the Settlement Proceeds at the time she filed her petition.  However, the bankruptcy court, being in the best position to assess Whigham's credibility, did not believe her assertion she simply forgot about the account, given her significant deposits into and withdrawals from the account.  *See Hawley v. Cement Indus., Inc. (In re Hawley)*, 51 F.3d 246, 248 (11th Cir. 1995) (noting the clear-error standard recognizes "the trial judge is best able to assess the credibility and evidentiary content of the testimony of the witnesses before him").  Moreover, as the bankruptcy court noted, although Whigham has characterized the account as

7

belonging to her son, the record indicates she was in fact the owner of the account, and it therefore should have been identified as an asset.

Similarly, Whigham initially failed to produce adequate records accounting for the dispersal of the Settlement Proceeds, which she testified constituted the largest lump sum payment she had ever received in her life. Given the size of the Settlement Proceeds, the bankruptcy court did not clearly err in finding it lacked sufficient information "from which the debtor's financial condition . . . might be ascertained." 11 U.S.C. § 727(a)(3). While Whigham eventually produced what appeared to be a fulsome accounting of what happened to the Settlement Proceeds, she did so only after United Asset engaged in third party discovery and filed a motion for summary judgment challenging the accuracy of her schedules. In fact, Whigham conceded at trial she waited until United Asset initiated an adversarial proceeding and moved for summary judgment to try and account for the dispersal of the Settlement Proceeds, as she did not believe it was incumbent upon her to do so beforehand.

Accordingly, we conclude the bankruptcy court did not err when it denied Whigham a discharge pursuant to section 727(a)(3).

B. *Section 727(a)(4)*

Pursuant to section 727(a)(4), a court shall grant a debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made

8

a false oath or account . . . or . . . withheld from an officer of the estate . . . any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(A), (D). To justify denial of discharge, the false oath must be fraudulent and material. *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984). Whether a debtor knowingly and fraudulently made a false oath is a question of fact, which we review for clear error. *See Wines v. Wines (In re Wines)*, 997 F.2d 852, 856 (11th Cir. 1993) ("Whether the debtor had the requisite wrongful intent is a question of fact which we review for clear error.").

The bankruptcy court found Whigham made several false oaths with regard to the Citibank ITF Account. Specifically, the court found Whigham failed to disclose the account on four separate court filings and on two separate occasions during her examination when specifically questioned about the existence of any other accounts. Whigham argues the factual findings do not establish the requisite intent on her part to conceal the existence of the account and, in any case, the omission was not material. We disagree.

First, as to intent, Whigham asserts, to the extent she was required to disclose the Citibank ITF Account, her failure to do so was inadvertent, as she was only reminded of the existence of the account "while researching her 2013 financial condition." However, this explanation strains credulity in light of the

9

large deposits Whigham made into the account, deposits that constituted a significant portion of the largest lump sum payment she had ever received. Additionally, even assuming Whigham's asserted innocent explanation for her failure to disclose the account was just as plausible, the bankruptcy court's contrary finding that the omission was deliberate, knowing, and fraudulent would not constitute clear error. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (noting a trial court's choice between two permissible views of the evidence cannot be clear error).

Second, as to materiality, Whigham's assertion the account in question was not properly characterized as her asset is, as discussed above, without merit. The account may have been held in trust for her son, but she was the owner of the account and had immediate access to the funds therein. She further notes the $105,000.00 of Settlement Proceeds she deposited in the account had been depleted by the time she filed the bankruptcy petition in 2015, and, therefore, the account "had no impact" on the bankruptcy case. Not so. Again, regardless of whether any of the specific Settlement Proceeds remained in the account, the account constituted an asset, which should have been disclosed. Moreover, even assuming the account contained little money, false oaths regarding worthless assets may bar the discharge of debts. *See Chalik*, 748 F.2d at 618 ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that

10

the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious.").

Accordingly, we conclude the bankruptcy court did not err when it denied Whigham a discharge pursuant to § 727(a)(4).

## C.  Section 727(a)(5)

Pursuant to section 727(a)(5), a court shall grant a debtor discharge unless "the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).  "The question of whether a debtor satisfactorily explains a loss of assets is a question of fact." *Chalik*, 748 F.2d at 619.

The bankruptcy court found Whigham failed to satisfactorily explain the loss of the Settlement Proceeds, noting it could not determine what really happened to the Settlement Proceeds due to Whigham's concealment of their disposition, particularly her concealment of the Citibank ITF Account.  The court further noted it found Whigham's explanation that she never disclosed the account because she simply forgot to be "unconvincing and untimely."  Whigham insists she did, in fact, ultimately account for the disposition of the Settlement Proceeds in the form of the affidavit she filed.

We conclude the bankruptcy court did not commit clear error.   The affidavit Whigham references certainly purports to provide a detailed accounting of the

11

Settlement Proceeds. However, in addition to contradicting Whigham's prior testimony at the examination concerning the disposition of those funds, the affidavit was itself subsequently contradicted by Whigham's verified response to United Asset's motion for summary judgment, particularly concerning the portion of the Settlement Proceeds deposited into the Citibank ITF Account. For example, the affidavit identifies a total of $90,000.00 deposited into the account, whereas the verified response indicated the total amount was $105,000.00. Given these discrepancies, and in light of Whigham's shifting explanations concerning the disposition of the Settlement Proceeds, we cannot find clear error in the bankruptcy court's finding Whigham failed to satisfactorily explain the diminution of the Settlement Proceeds by failing to provide a good faith account of their disposition.

Accordingly, we conclude the bankruptcy court did not err when it denied Whigham a discharge pursuant to section 727(a)(5).

### III. CONCLUSION

Based on the foregoing, we agree with the district court that the bankruptcy court committed no error in denying the Appellant discharge pursuant to sections 727(a)(3), (a)(4), and (a)(5).

**AFFIRMED.**