In re Effie Lou **GORDON**, Debtor.

**Agribank, FCB, Plaintiff,**

v.

**Effie Lou Gordon, Defendant.**

**Bankruptcy No. 00–51939.**
**Adversary No. 00–5124.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

June 15, 2001.

John T. McGoldrick, Jr., Martin, Snow, Grant & Napier, LLP, Macon, GA, for Plaintiff.

Wesley J. Boyer, Katz, Flatau, Popson & Boyer, LLP, Macon, GA, for Debtor.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

Before the Court is a Complaint for Determination of Dischargeability of Debt

filed by Agribank, FCB ("Plaintiff") against Effie Lou Gordon ("Debtor") pursuant to 11 U.S.C. § 523(a)(2)(B). This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(I).

The Court held a trial on April 12, 2001. After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Debtor and her husband have operated a family farming business since 1982. At some point before 1998, the couple developed financial troubles with Debtor's husband accruing a great deal of debt and needing financial assistance. In 1998, Debtor's husband found out about a money lending program called AgSmart. AgSmart was a program designed and implemented by Plaintiff to allow farmers to finance the purchase of agricultural products. Debtor's husband and Debtor decided that Debtor should apply for the AgSmart loan. Debtor's husband then went to Terra, an agricultural products supplier ("Terra"), to apply for the loan on behalf of Debtor.

On March 4, 1998, Debtor's husband met with Ritchie Rhodes, a Terra representative. Debtor's husband proceeded to apply for two loans on behalf of Debtor by signing her name to a loan application for $70,000 and a loan application for $30,000. Debtor's husband did this with the approval of Debtor. The financial information as to income, assets, and liabilities, was written on the application form by Ritchie Rhodes after receiving the information from Debtor's husband. While Debtor's husband was aware of the financial information that Ritchie Rhodes listed on the applications, Debtor did not become personally aware of this information until some time after the applications were submitted.

The application for $70,000 was faxed to Plaintiff on the same day Debtor's husband signed the application. The application listed Debtor's income as $271,000, her assets as $440,000, and her liabilities as $208,000. The application for $30,000 was not faxed to Plaintiff until June 29, 1998. That application listed Debtor's income as $271,000, her assets as $440,000, and her liabilities as $200,000.

The application requested financial information regarding the applicant including income information from the previous year. However, Debtor had no individual income from the previous year. The family farming business had income from the previous year of approximately $140,000. In addition, Debtor did not have many assets owned individually, and the total of the assets was no more than $150,000. Upon learning of the financial information listed on the applications, Debtor did not take any action to correct the errors in the information provided to Plaintiff.

Debtor's husband explained that the income listed was the business income and then later changed that explanation to say the income figure also included projected income. Debtor explained that the assets listed were jointly owned with her husband, but later said the figure also included projected income.

Both the first application for $70,000 and the second application for $30,000 were approved by Plaintiff. The procedure used to process the loan applications involved a three-step score card system used by Plaintiff to assess all such applications. First, Plaintiff assesses the financial information provided in an application and assigns a numeric value to it. Second, an independent credit bureau makes an assessment resulting in the assignment of a

numeric value. Lastly, the numeric values are combined to create a score, with the information from the application weighted 46% and the credit bureau information weighted 54% of the final score. A score of over 200 causes such loans to be approved, and a score of 200 or less means the loans will not be approved. On the first application, Debtor received a score of 240. On the second application, Debtor received a similar score. Had Debtor listed her correct income, assets, and liabilities, her score would have been 185 on the first application, and a similar score on the second application. With the correct information, Debtor's loans would not have been approved.

In March 1999, the first loan of $70,000 came due and Debtor failed to pay the loan. In June 1999, the second loan for $30,000 came due and Debtor failed to pay that loan. Subsequently, Debtor filed for Chapter 7 bankruptcy relief on March 30, 2000.

### Conclusions of Law

■ The purpose of the Code's discharge provisions is to allow insolvent debtors a chance to "make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Chase Manhattan Bank v. Ford (In re Ford)*, 186 B.R. 312, 316 (Bankr.N.D.Ga.1995)(quoting *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). However, this opportunity is only afforded to the honest, yet unfortunate, debtor. *Id.* In

order to ensure that only honest debtors get the benefit of this fresh start, the Code provides exceptions to its discharge provisions. These exceptions are contained in 11 U.S.C. § 523.

■ Because the fresh start is one of the Code's most important objectives, these exceptions are to be narrowly construed in favor of the debtor. *Ford*, 186 B.R. at 316 (citing *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986), *abrogated by*, *Grogan*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755) (establishing the standard of proof as preponderance rather than clear and convincing); *Chevy Chase Bank v. Briese (In re Briese)*, 196 B.R. 440 (Bankr.W.D.Wis. 1996). In addition, the creditor objecting to the discharge of a debt has the burden of proving that the debtor is not entitled to have the debt discharged. *Murphy & Robinson Inv. Co. v. Cross (In re Cross)*, 666 F.2d 873, 880 (5th Cir.1982); *Maco Fed. Credit Union v. Adair (In re Adair)*, 17 B.R. 456, 460 (Bankr.N.D.Ga.1980).

■ The exception relevant to this case is contained in Section 523(a)(2)(B).[1] Section 523(a)(2)(B) requires four elements to be proven in order to deny the discharge of a debt. A party seeking a denial of discharge must show that the debt obtained by a writing is: (1) materially false, (2) respecting the debtor's financial condition, (3) on which the creditor to whom the debt is liable for such money, property, services, or credit reasonably relied, and (4) caused to be made or published by the debtor with the intent to deceive. *Equita-*

---

1. Sections 523(a)(2)(B) provides in pertinent part:

    (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—(2) for ... an extension ... of credit, to the extent obtained by—(B) use of a statement in writing—(i) that is materially false; (ii) respecting the

debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such ... credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive[.]

11 U.S.C. § 523(a)(2)(B)(West 1994).

*ble Bank v. Miller (In re Miller)*, 39 F.3d 301 (11th Cir.1994).

A party demonstrates that a writing is materially false by evidence that the writing was false at the time it was created, the falsity was material in amount, and the falsity was material in the effect it had on the creditor receiving the writing such that it effected the creditor's decision making process. *Enterprise Nat'l Bank of Atlanta v. Jones (In re Jones)*, 197 B.R. 949, 955 (Bankr.M.D.Ga.1996). Here, Debtor's loan application for $70,000 and her loan application for $30,000 both listed her income as $271,000 and her assets as $440,000. In actuality, Debtor's income and assets were $0, and less than $150,000, respectively, at the time her loan applications were submitted. Based on this information, Gary Grosdidier, a representative of Plaintiff, testified at trial that had Debtor provided the accurate financial information as to her alone, she would not have been approved for the loans.[2] Accordingly, the Court finds that the information provided by Debtor in her loan applications was materially false. In addition, given that the false information related to Debtor's income and assets, the Court finds that this material falsity related to Debtor's financial condition.

A more difficult question is presented by the third requirement under Section 523(a)(2)(B), that the creditor must have reasonably relied on the false financial information contained in the writing.

A determination of reasonable reliance is made on a case by case basis by weighing many different factors in the balancing of two competing principles. *Enter. Nat'l Bank of Atlanta*, 197 B.R. at 961. The first principle is that the courts should not second guess the decisions of creditors in making loans or setting loan policy. *Id.* The second is that the requirement of reasonable reliance should not be used by creditors as a shield in allowing them to ignore facts readily available to them. *Id.* The factors weighed in this balancing, among others, are whether the creditor followed its established lending procedure in approving the loan, whether the creditor used outside sources to verify the financial information provided by the debtor, whether the creditor had a previous relationship with the debtor, and whether the writing contained any "red flags" that would have alerted the creditor of potential inaccuracies in the financial information provided. *Id.*

In the case at hand, Debtor submitted two loan applications containing materially false financial information. Debtor had never applied for a loan with Plaintiff before these applications were submitted. The first application dated March 4, 1998, for $70,000 was submitted on March 4, 1998. The second application dated March 4, 1998, for $30,000 was submitted on June 29, 1998, and contained similar financial information to the first application. Both applications were analyzed using the same

---

**2.** Both loan applications requested "gross agricultural and/or business income/revenue . . . (most recent full year)" and "total assets." At trial, Debtor argued that these financial questions are vague and subject to different interpretations. It was argued that Debtor's husband, and later Debtor, interpreted these questions as asking for their household income and their total household assets instead of Debtor's individual income and individual assets. The Court agrees with Debtor that the

financial questions posed on the loan applications are vague. In addition, the Court has serious concerns about using an individual trained by Plaintiff to advise an applicant in how to interpret those questions and later using the information resulting from the confusion against an applicant. However, because the financial information provided by Debtor was false regardless of the interpretation used, the Court does not find the argument persuasive in this case.

loan processing procedure that Plaintiff uses on other loan applications of this type.

The procedure is a score card system in which the financial information provided is entered into a computer program and given a numeric value. In addition, the debtor's financial history is obtained from a credit bureau and assigned a numeric value. The numeric scores are then combined with the resulting value used to determine whether a loan will be approved or not.

■ Considering the factors noted above, the Court finds that Plaintiff reasonably relied on the financial information in the first loan application. Plaintiff followed established lending procedures and used an outside source to evaluate Debtor's credit worthiness. In addition, Plaintiff had no prior relationship with Debtor, and Debtor's application did not contain any "red flags" on its face. However, the Court cannot reach this same conclusion as to the second application.

■ While the lending procedure with the second application was the same, there were "red flags" present on the second application, in part due to the relationship established by the first application, a relationship that would have caused a reasonable creditor to question the accuracy of the financial information provided in the second application. First, the liabilities listed on the second application were $8,000 less than the liabilities listed on the first application. Upon comparison with the first application, not only is this amount lower and thereby inaccurate, but also the amount is inaccurate because it does not reflect the additional $70,000 of liability incurred and unpaid as a result of the first loan application. However, even without engaging in this comparison, a reasonable creditor would not have relied on the financial information provided by Debtor in the second application simply

because the date of the application was over three and a half months prior to the date the application was submitted. Changes were likely to have occurred in the months between writing the application and submitting the application, changes which could have altered the accuracy of the financial information provided. Accordingly, the application was, on its face, lacking current information, and a reasonable creditor would not have relied on such stale financial data. Plaintiff has not established its Section 523(a)(2)(B) claim as to the second loan application, and Debtor's discharge as to that debt will be granted. Having dispensed with the Section 523(a)(2)(B) claim as to the second loan application, the Court now proceeds to addressing the final requirement of Section 523(a)(2)(B) as to the first loan application.

■ The final requirement of Section 523(a)(2)(B) is that Debtor must have made or published this false financial information with the intent to deceive. This intent element is a factual determination whereby the court looks to the totality of the circumstances to make an assessment. *Miller*, 39 F.3d at 305. As this Court noted recently in *Agribank v. O'Steen*, a debtor's reckless indifference to the accuracy of her loan application may be a factor in determining whether there was an intent to deceive. *Agribank v. O'Steen (In re O'Steen)*, Adv. No. 99–5035 (Bankr. S.D. Ga. April 11, 2001).

■ In addition to Debtor's reckless indifference, it appears Debtor intended the consequences of her actions. While Debtor allowed her husband to apply for two loans on her behalf and to sign her name to those loan applications, she did not review these applications when they were submitted and had no idea what financial information had been provided to

Plaintiff. However, after her husband signed these applications, Debtor became aware of the financial information contained in them. Thereafter, Debtor made no attempt to correct the inaccurate information before completing the loan closing process.

Debtor, in allowing her husband to fill out and sign these applications for her, exhibited reckless indifference. *Massey–Ferguson Credit Corp. v. Archer (In re Archer)*, 55 B.R. 174, 179 (Bankr.M.D.Ga. 1985). The failure to inform Plaintiff after learning about the inaccurate information indicates that Debtor intended the consequences that resulted. As this Court stated in *Agribank v. O'Steen*, a knowing renewal of a misrepresentation could lead to the conclusion that a debtor intended to deceive. *Id.* In addition, the reason Debtor applied for these loans was because her husband would not have been approved for the loans had he been the applicant. Further, neither Debtor nor her husband could articulate a sufficient explanation for how the financial information in those loan applications was computed. This demonstrates that Debtor made a knowing, intentional decision to deceive Plaintiff. Accordingly, Plaintiff has established a claim under Section 523(a)(2)(B) as to the first loan application for $70,000, and Debtor's discharge as to that loan will be denied.

An order in accordance with this opinion will be entered on this date.

## ORDER

In accordance with the memorandum opinion entered on this date, it is hereby

ORDERED that Plaintiff's request to determine that the $70,000.00 loan be declared as nondischargeable is GRANTED, and it is hereby further

ORDERED that Plaintiff's request to determine that the $30,000.00 be declared as nondischargeable is DENIED.