**In the Matter of Dennis H. McDOWELL, Debtor.**

**Bank of North Georgia, Plaintiff,**

v.

**Dennis H. McDowell, Defendant.**

**Bankruptcy No. 11–13519.**
**Adversary Proceeding No. 12–01020.**

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

June 3, 2013.

Rachel A. Humphrey, Stokes Lazarus & Carmichael LLP, Atlanta, GA, for Plaintiff.

J. Nevin Smith, Smith Conerly LLP, Carrollton, GA, for Defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is a Motion for Summary Judgment, filed by Bank of North Georgia (hereinafter the "Plaintiff"). The motion is opposed by Dennis McDowell (hereinafter the "Debtor" or "Defendant"). As this matter arises from a complaint objecting to the Debtor's discharge and to the dischargeability of a particular debt, it constitutes a core proceeding, over which this Court has subject matter jurisdiction. *See* 28 U.S.C. § 157(b)(2)(I)-(J).

### FINDINGS OF FACT

1. On October 24, 2011, Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[1] (Pl.'s Statement of Material Facts, ¶ 10; Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 10.).

2. On June 26, 2007, Secured Realty & Investments, Inc. (hereinafter "Secured Realty"), a Georgia corporation, executed a promissory note, identified as Note 21, in favor of Citizens Bank and Trust of West Georgia (hereinafter "CB & T") in the principal sum of $3,800,000.00. (Pl.'s Statement of Material Facts, ¶ 13: Ex. A.;

Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 13.). On June 26, 2007, the Debtor executed a personal guaranty in connection with Loan No. 21 in which he personally guaranteed the debt of Secured Realty to CB & T. (*See* Pl.'s Statement of Material Facts, ¶ 13; Ex. D.; Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 13.).

3. On February 19, 2008, Secured Realty executed a promissory note, identified as Note 16, in favor of CB & T in the principal amount of $471,980.33. (Pl.'s Statement of Material Facts, ¶ 13; Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 13. Ex. B.). On April 8, 2008, the Debtor executed a personal guaranty in which he personally guaranteed the debt of Secured Realty to CB & T. (*See* Pl.'s Statement of Material Facts, ¶ 13; Ex. E.; Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 13.).

4. On January 8, 2009, Secured Realty executed a promissory note, identified as Note 20, in favor of Plaintiff in the principal amount of $911,557.25. (Pl.'s Statement of Material Facts, ¶ 13; Ex. C.; Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 13.). In connection with Note 20, the Debtor also executed a personal guaranty on January 8, 2009. (*See* Pl.'s Statement of Material Facts, ¶ 13; Ex. F.; Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 13.).

5. On October 24, 2008, Plaintiff merged with CB & T. By the terms of the merger, the surviving entity was Bank of North Georgia. On June 1, 2010, Plaintiff again merged with Columbus Bank and Trust Company, which at the same time changed its name to Synovous Bank, and Plaintiff became a division of Synovous Bank. (Pl.'s Statement of Material Facts, ¶ 11, FN 1.).

6. On or before October 8, 2008, Secured Realty and Defendant defaulted on obligations owed to Plaintiff or its predeces-

---

1. 11 U.S.C. § 101 et seq.

sor, including Note 20. Subsequently, Secured Realty and Defendant defaulted on other obligations owed to Plaintiff, including Note 21. (Pl.'s Statement of Material Facts, ¶ 15.).

7. On October 23, 2008, CB & T offset funds in the Defendant's deposit accounts on the belief and information that Defendant defaulted on his notes. (*See* Pl.'s Statement of Material Facts, ¶ 18.).

8. On October 24, 2008, the Defendant provided to the Plaintiff, or its predecessor, a financial statement, described as the Defendant's balance sheet, as of October 24, 2008, (hereinafter the "Balance Sheet"). The Defendant endorsed the Balance Sheet on October 27, 2008 as an accurate depiction of his financial status. (*See* Pl.'s Statement of Material Facts, ¶ 19. Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 19.).

9. The Plaintiff filed suit in the Superior Court of Carroll County against Secured Realty and the Defendant alleging default on Note 20 and Note 21. (*See* Pl.'s Statement of Material Facts, ¶¶ 15–16.). On May 2, 2011, the Superior Court of Carroll County entered summary judgment in favor of the Plaintiff for Note 21. The Superior Court of Carroll County denied Pl.'s Motion for Summary Judgment on Note 20. Both parties then appealed to the Georgia Court of Appeals. On March 7, 2012, the Georgia Court of Appeals affirmed the entry of judgment in favor of Plaintiff on Note 21 and granted Plaintiff a judgment on Note 20.[2] *See Bank of North Georgia v. Secured Realty & Investments, Inc., et al.,* 314 Ga.App. 628, 725 S.E.2d 336 (2012).

CONCLUSIONS OF LAW

The Plaintiff seeks a declaration that the debts owed by the Debtor to the Plaintiff are nondischargeable pursuant to section 523(a)(2)(B) of the Bankruptcy Code, and nondischargeable pursuant to section 523(a)(2)(A) of the Bankruptcy Code, and alternatively seeks the denial of the Debtor's discharge under section 727(a)(4). The Plaintiff requested summary judgment as to all claims on March 8, 2013, and oral argument on the motion took place on May 10, 2013.

A. *Summary Judgment Standard*

In accordance with Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a party moving for summary judgment is entitled to prevail only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265; *see also* FED. R. BANKR.P. 7056. The moving party bears the initial burden of establishing that no genuine factual issue exists. *See Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). The movant must point to the pleadings, discovery responses or supporting affidavits which tend to show the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548.

**2.** The Georgia Court of Appeals held "because the record shows that BNG proved a prima facie case by showing that Secured and McDowell signed the promissory note and guarantee and are now in default, and as we have found no merit in the issues raised by Secured and McDowell in rebuttal, the trial court should have granted summary judgment in favor of BNG." *Bank of North Georgia v. Secured Realty & Investments, Inc., et al.,* 314 Ga.App. 628, 725 S.E.2d 336 (2012).

Moreover, the Court must construe this evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rollins v. TechSouth, Inc.,* 833 F.2d 1525 (11th Cir. 1987). If the moving party fails to satisfy its burden by showing an absence of any genuine issues of material fact, no burden of going forward arises for the opposing party. *Clark,* 929 F.2d at 608. However, if the moving party satisfies its burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

### B. *Section 523(a)(2)(B)*

The discharge of a pre-existing debt is one of the most primary tenets of bankruptcy policy. Indeed, "a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.'" *Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citations omitted). At the same time, however, equitable policies mandate that such mechanism for unencumbered fresh starts should only redound to the benefit of the honest, yet unfortunate, debtors. *Id.* at 286–87, 111 S.Ct. 654. In light of these competing policy goals, Congress included the following provision in the Bankruptcy Code:

(a) A discharge under section 722, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor of any debt—

\* \* \* \*

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing ... that is materially false ... respecting the debtor's or an insider's financial condition ... on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied ... [,] and that the debtor caused to be made or published with intent to deceive.

\* \* \* \*

11 U.S.C. § 523(a)(2)(B). Thus, through section 523(a)(2)(B), the Code offers a means of denying the benefits of a fresh start to those individuals who do not qualify as "honest but unfortunate debtors". *Id.* at 287, 111 S.Ct. 654. Like other exceptions to discharge, however, the provisions of section 523(a)(2)(B) warrant narrow construction. *See Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Schweig v. Hunter (In re Hunter),* 780 F.2d 1577, 1579 (11th Cir. 1986). The plaintiff bears the burden of establishing non-dischargeability under section 523(a)(2). *Hunter,* 780 F.2d at 1579.

To succeed under section 523(a)(2)(B), a creditor must establish that: 1) the debtor owes the plaintiff a debt for money, property, or the extension of credit that was obtained by the debtor through the use of a written statement; 2) the written statement was materially false; 3) the written statement concerns the debtor's financial condition; 4) the plaintiff reasonably relied on the statement; and 5) the debtor published the writing with the intent to deceive the plaintiff. *See* 11 U.S.C. § 523(a)(2)(B); *Transp. Alliance Bank v. Owens (In re Owens),* 2006 WL 6592058, at \*2 (Bankr.N.D.Ga. May 22, 2006) (Drake, J.).

The parties dispute each required element in the section 523(a)(2)(B) analysis, with the exception of the third ele-

ment. Indeed, there appears to be no question that the Defendant's Balance Sheet as of October 24, 2008 was a written statement concerning the Debtor's financial condition.[3] However, both parties dispute the following: 1) whether the Debtor obtained a debt or an extension of credit from the Plaintiff, through the use of the October 24, 2008 Balance Sheet; 2) whether the information provided in the October 24, 2008 Balance Sheet was materially false; 3) whether the reliance on the October 24, 2008 Balance Sheet was reasonable; and 4) whether the Debtor published the October 24, 2008 Balance Sheet with the intent to deceive the Plaintiff.

The Plaintiff argues that the Debtor requested that the Plaintiff release a portion of his offset funds and renew his loans based upon the information provided in the Balance Sheet. (Pl.'s Statement of Material Facts, ¶¶ 19–20.). The Debtor alternatively asserts that the Balance Sheet was provided to the Plaintiff only in an effort to persuade the Plaintiff to release a portion of the offset funds for the purpose of covering outstanding checks previously issued by the Debtor. (Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 20.). The record does, in fact, show that from the offset funds, which totaled $638,354.42, only an amount of $84,712.50 was released to pay Debtor's outstanding checks. (Def.'s Resp. to Pl.'s Statement of Material Facts, ¶ 22; *See* Newman. Aff., ¶ 12, Ex. 6.). The Debtor further argues that the renewal of the third loan was made two-and-one-half months after the Debtor provided the Balance Sheet to the Plaintiff, and therefore, the renewal of that loan was not made in reliance solely upon the information in the Balance Sheet. Because of

the reasons stated, the Court believes the information on record raises several issues of genuine material fact regarding the extent, if any, to which the Debtor owes a debt or received an extension of credit from the Plaintiff through the use of the October 24, 2008 Balance Sheet.

■ As to the second element, the Debtor disputes that the financial statements submitted to the Plaintiff were "materially false." "A party demonstrates that a writing is materially false by evidence that the writing was false at the time it was created, the falsity was material in amount, and the falsity was material as to the effect it had on the creditor's receiving the writing such that it effected the creditor's decision making process." *In re Gordon,* 277 B.R. 805 (Bankr. M.D.Ga.2001); *see also In re Wright,* 299 B.R. 648, 659 (Bankr.M.D.Ga.2003). ("A falsehood is material if it is 'significant in both amount and effect on the creditor receiving the financial statement ... [the false information must have] actual usefulness to the creditor receiving the financial statement.' ").

The Plaintiff contends that the Debtor's financial statements were false at the time he submitted them to the Plaintiff because the statements overvalued the Debtor's assets and understated his liabilities. Specifically, the Plaintiff alleges that: 1) the Debtor did not have $400,000.00 in cash in Chattahoochee Mortgage on October 24, 2008 as represented on his Balance Sheet; 2) the Debtor did not own the Wyndham Gates, Alabama, development contract valued at $5,350,000.00 on October 24, 2008, as represented on his Balance Sheet; 3)

---

**3.** It should be noted that the Debtor does dispute that the Balance Sheet was the only financial information provided by the Debtor to the Plaintiff. However, this fact is not relevant to the issue of whether the state-

ments were published, but rather to the issue of whether the Plaintiff reasonably relied on the statements or whether the statements contained materially false information.

the Debtor did not have a $1,050,000.00 "equipment pledge" with Regions Bank on October 24, 2008, as represented on his Balance Sheet, 4) the Debtor did not own construction equipment valued at $402,000.00 on October 24, 2008, as represented on his balance sheet; 5) the Debtor did not have $233,000.00 in his CB & T bank accounts on October 24, 2008, as represented in his Balance Sheet; 6) the Debtor did not have $500,000.00 in bank certificates of deposit as of October 24, 2008, as represented in his October 24, 2008 Balance Sheet; 7) the Debtor did not own Newnan Bank of Coweta stock valued at $1,800,000 on October 24, 2008, as represented on his Balance Sheet; 8) the Debtor did not own 36,000 shares of Southern States Bank stock valued at $360,000 on October 24, 2008, as represented on his Balance Sheet; 9) the Debtor did not own First Georgia Banking Company stock valued at $5,000,000.00 on October 24, 2008, as represented on his Balance Sheet. (*See* Pl.'s Statement of Material Facts, ¶¶ 24–31.).

The Debtor disputes that he provided false information on his Balance Sheet. The Debtor instead argues that the information provided to the bank was a true representation of his financial condition as of October 24, 2008. Specifically, the Debtor primarily disputes that he represented having $4,000,000.00 in "cash" in Chattahoochee Mortgage as reflected on the October 24, 2008 Balance Sheet. The Debtor further argues that he made truthful representations of his ownership as to the following in that, as of October 24, 2008: 1) he accurately stated his ownership interest in the Wyndham Gate Subdivision; 2) that he accurately stated his ownership interest of a certificate of deposit in the amount of $1,050,000.00, pledged as collateral on a loan made by Regions Bank to Keith N. Bollendorf; 3) that he accurately stated his ownership

interest in construction equipment; 4) that he accurately represented his ownership interests in his CB & T accounts and certificates of deposit; and 5) that he accurately represented the value of his stock ownership interests in Newnan Bank of Coweta and First Georgia Banking Company. The Debtor does not dispute that he only owned 30,000 shares, instead of 36,000 shares, of Southern States Bank stock as of October 24, 2008, but contends that the misrepresentation was a typographical error and does not meet the standard of "material". (*See* Def.'s Resp. to Pl.'s Statement of Material Facts, ¶¶ 24–31.).

As to the materiality of the statements, the Court recognizes that the representation of one's financial condition through the use of financial statements, such as the Balance Sheet, could be material as to whether a financial institution, would extend credit or issue debt to an individual. *See In re Gordon,* 277 B.R. 805 (Bankr. M.D.Ga.2001); *see also In re Wright,* 299 B.R. 648, 659 (Bankr.M.D.Ga.2003). However, without a greater development of the facts in this case, the Court finds that there is insufficient evidence in the record to establish that false statements were made on the Debtor's Balance Sheet, impacting the Plaintiff's decision making process.

■■ Although the Plaintiff's reliance on the Debtor's Balance Sheet appears to be reasonable based upon the record, the extent to which the Plaintiff relied on the Balance Sheet is a question of fact that still remains unresolved. "The reasonable reliance analysis is done on a case-by-case basis considering the totality of the circumstances." *In re Wright,* 299 B.R. at 659 (citing *Agribank, FCB v. Gordon (In re Gordon),* 277 B.R. 805, 810 (Bankr. M.D.Ga.2001). When considering the to-

tality of the circumstances in a particular case, the Court may consider whether: 1) the creditor followed its established lending procedure in renewing the loan application; 2) the creditor verified the financial statements through outside sources; 3) the creditor had a previous relationship with the debtor; and 4) whether the financial statements contained any "red flags" that should have alerted the creditor to potential inaccuracies. *Id.* at 659–60.

In this case, the Plaintiff (and its predecessors in interest) had a business relationship for over twenty years with the Defendant, during which Plaintiff loaned Defendant and his business entities millions of dollars. (Pl.'s Statement of Material Facts, ¶ 11.). The Plaintiff utilized its normal practices in requesting and reviewing Defendant's current financial condition. (*See* Pl.'s Statement of Material Facts, ¶¶ 18–22.). Likewise, the Plaintiff claims that it relied on the Balance Sheet in releasing the offset funds and renewing the loan. Conversely, the Defendant argues that the Balance Sheet was not provided to the Plaintiff for the purpose of seeking an extension of credit or the renewal of a loan, but rather, to secure the release of offset funds in order to cover previously issued checks. The Defendant further argues that the loan's renewal was not attained solely upon the Balance Sheet but, instead, asserts that the Plaintiff conducted additional due diligence in determining to renew the loan. (*See* Newman's Dep. pp. 57–58.). The Court, therefore, finds that questions of fact remain as to the extent of which Plaintiff relied on the Balance Sheet for the purpose of extending credit or refinancing the debt of the Debtor.

Most importantly, the record displays insufficient evidence to support a finding that, even if the Debtor's statements on the Balance Sheet were false, the Debtor executed them with the intent to deceive the Plaintiff. Moreover, questions of fact still remain as to whether the Defendant provided false information in his Balance Sheet. Although Plaintiff submits that through the publication of the false statements the Debtor intended to deceive the Plaintiff in order to release the offset funds and renew his loan, the record is insufficient to conclude on summary judgment that the Debtor produced the Balance Sheet with the requisite intent to deceive the Plaintiff.[4]

Ultimately, the Court finds that material questions of fact remain as to: 1) whether the Debtor obtained a debt or an extension of credit from the Plaintiff, through the use of the October 24, 2008 Balance Sheet; 2) whether the information provided in the October 24, 2008 Balance Sheet was materially false; 3) whether the reliance on the October 24, 2008 Balance Sheet was reasonable; and 4) whether the Debtor published the October 24, 2008 Balance Sheet with the intent to deceive the Plaintiff. For these reasons, the Court believes summary judgment as to the section 523(a)(2)(B) claim to be premature and inappropriate at this time.

### C. *Section 523(a)(2)(A)*

[8–10] Under section 523(a)(2)(A) of the Bankruptcy Code, "[a] discharge under [section 727(a)] does not discharge an individual debtor from any debt … for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by … false pretenses, a

---

4. This Court has held that if there is room for an inference of honest intent, the question of nondischargeability must be resolved in a debtor's favor. *Bancorpsouth Bank v. Calla-way,* 2006 WL 6589022 (Bankr.N.D.Ga.2006) (Drake, J.) (citing *In re Collier,* 231 B.R. 618 (Bankr.N.D.Ohio 1999)).

false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Like other exceptions to discharge, section 523(a)(2) warrants narrow construction. *See Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir. 1986). The plaintiff bears the burden of establishing nondischargeability under section 523(a)(2). *Hunter*, 780 F.2d at 1579. To establish that a debt is excepted from discharge under section 523(a)(2)(A), the creditor must prove by a preponderance of the evidence that:

(1) the debtor made a false representation, other than an oral statement respecting the debtors financial condition, with intent to deceive the creditor;

(2) the creditor actually relied on the misrepresentation;

(3) the creditor's reliance was justifiable; and

(4) the misrepresentation caused a loss to the creditor.

*Duncan v. Bucciarelli (In re Bucciarelli)*, 429 B.R. 372, 375 (Bankr.N.D.Ga.2010) (Drake, J.); *See In re Bilzerian*, 100 F.3d 886, 892 (11th Cir.1996); *In re Johannessen*, 76 F.3d 347 (11th Cir.1996); *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

"In order to establish the first element, the creditor must prove that the debtor made a 'false representation,' other than an oral statement regarding the debtor's financial condition, with the intent to deceive the creditor." *Duncan v. Bucciarelli (In re Bucciarelli)*, 429 B.R. 372, 375 (Bankr.N.D.Ga.2010) (Drake, J.). Additionally, a statement made with "reckless indifference to the truth is sufficient to bar a discharge" under section 523(a)(2)(A). *Id.; See Birmingham Trust Nat. Bank v. Case*, 755 F.2d 1474 (11th Cir.1985).

"Fraud may consist of silence, concealment or intentional non-disclosure of a material fact, as well as affirmative representation of a material fact." *Id.; see also Matter of Thomas*, 12 B.R. 765 (Bankr.N.D.Ga.1981) (Norton, J.).

Further, "[a]ctual fraud precluding discharge consists of any deceit, artifice, trick or design, involving the direct and active operations of the mind used to circumvent or cheat another; something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." *Duncan v. Bucciarelli (In re Bucciarelli)*, 429 B.R. 372, 375 (Bankr.N.D.Ga.2010) (Drake, J.); *see also In re Butler*, 277 B.R. 843, 848 (Bankr.M.D.Ga.2002). "As distinguished from false representation, which is an express misrepresentation[,] false pretense involves an implied misrepresentation or conduct intended to create and foster a false impression ... and [i]t is well recognized that silence, or the concealment of a material fact, can be the basis of a false impression which creates a misrepresentation actionable under § 523(a)(2)(A).'" *Duncan v. Bucciarelli (In re Bucciarelli)*, 429 B.R. 372, 375 (Bankr.N.D.Ga.2010) (Drake, J.) (citing *In re Brandon*, 297 B.R. 308 (Bankr.S.D.Ga.2002)). Moreover, as a debtor is unlikely to admit that he made a false statement or omission with the intent to deceive a creditor, the court is permitted to infer such fraudulent intent from the facts and circumstances of the case. *See Duncan*, 429 B.R. 372, 375–76.

As to whether the Debtor made a false representation with intent to deceive the Plaintiff, the Court finds that there is insufficient evidence in the record to support a judgment as a matter of law in favor of the Plaintiff. As evidence of false representations, the Plaintiff cites to several alleged fraudulent transfers of assets from

the Debtor to Debtor's wife, Jackie McDowell, and to the McDowell Family Limited Liability Limited Partnership. (*See* Pl.'s Statement of Material Fact, ¶¶ 46–94.). However, the Defendant disputes that any transfers were fraudulent and supports this position with his own proffer of evidence. (*See* Def.'s Resp. to Pl.'s Statement of Material Facts, ¶¶ 46–94.). Therefore, a question of fact remains as to whether the Debtor provided a false representation to the Plaintiff.

 Even if the Court finds that false representations were made to the Plaintiff, the Plaintiff up to this point, at least, has failed to demonstrate by a preponderance of the evidence that the Debtor made the representations with the intent to deceive the Plaintiff. As stated above, the Court is permitted to infer such intent from the facts and circumstances of the case. However, the majority of the material facts in this case are disputed. Exceptions to a Debtor's discharge, including those on grounds of fraud, must be strictly construed and must be proven by a preponderance of the evidence. *See Dunn v. Whyte (In re Whyte)*, 487 B.R. 578, 583 (Bankr.N.D.Ga.2013) (Brizendine, J.). Questions of intent are not generally appropriate for summary judgment. *Id.* The Plaintiff argues that the requisite intent to deceive is apparent through the Debtor's "ongoing scheme of fraudulently conveying substantially all of his assets" and through other errors and omissions in the administration of his Bankruptcy case. While the requisite intent under section 523(a)(2)(A) may exist, the evidence presented in the record fails to substantiate it at this stage. Because each requirement of section 523(a)(2)(A) must be met for the application of this exception to discharge, and since genuine questions of fact remain, the Court concludes summary judgment should be denied as to Plaintiff's claim under section 523(a)(2)(A).

## D. Section 727(a)(4)

 When proceeding under section 727, a plaintiff bears the burden of demonstrating that a denial of discharge is warranted. *See* FED. R. BANKR.P. 4005; *see also In re Wines*, 997 F.2d 852, 856 (11th Cir.1993). The plaintiff must satisfy this burden by a preponderance of the evidence. *Transp. Alliance Bank*, 2006 WL 6592058, at *6 (Bankr.N.D.Ga. May 22, 2006) (Drake, J.); *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 966–67 (7th Cir. 1999); *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1034 (6th Cir. 1999); *Farouki v. Emirates Bank Int'l Ltd.*, 14 F.3d 244, 249 (4th Cir.1994). Furthermore, the Court must interpret the applicable provisions of section 727 narrowly, so as to foster a presumption of the debtor's eligibility for a discharge. *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993); *In re Burgess*, 955 F.2d 134, 136 (1st Cir.1992); *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir.1987). "Completely denying a debtor his discharge, as opposed to avoiding a transfer or declining to discharge an individual debt . . . is an extreme step and should not be taken lightly." *Rosen*, 996 F.2d at 1530; *cf. Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir.1934) ("[T]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and conjectural."). Additionally, litigation seeking the denial of a debtor's discharge under section 727 is rarely amenable to resolution at the summary judgment stage. *See United States v. Lenard (In re Lenard)*, 140 B.R. 550, 555 (D.Colo.1992) (finding that summary judgment is "particularly problematic" under section 727 since the issues "often require inquiry into the debtor's state of mind or justification for his actions, necessitating explanatory testimo-

ny by the debtor and an assessment of his demeanor and credibility").

With respect to section 727(a)(4), the plaintiff has the burden of proving that (1) the debtor knowingly made a false statement under oath or "presented or used a false claim"; (2) the statement is material to the bankruptcy proceeding; and (3) the debtor made the statement with a fraudulent intent. *Transp. Alliance Bank*, 2006 WL 6592058, at *6 (Bankr.N.D.Ga. May 22, 2006) (Drake, J.); *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 177–78 (5th Cir.1992). For this purpose, a statement made in a debtor's bankruptcy schedules is considered to be made under oath. *See id.*

In this case, the Plaintiff contends that the Debtor "made numerous false statements and omissions regarding his assets, such misrepresentations and omissions being material to the case." (Pl.'s Brief p. 18; Pl.'s Statement of Material Facts, ¶¶ 107–35.) However, the falsity of these statements are disputed as Debtor claims that such representations were indeed accurate. (*See* Def.'s Response to Pl.'s Statement of Material Facts, ¶¶ 107–35.). Moreover, summary judgment is particularly problematic for the Plaintiff's section 727 claim because the issue depends on the Debtor's intent or state of mind. Accordingly, the granting of summary judgment in favor of the Plaintiff under section 727 would be inappropriate.

### CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Summary Judgment must be, and hereby is, **DENIED**.