**IN the MATTER OF: Glenn Lee THOMPSON, Heike Birgit Thompson,**

**Guy G. Gebhardt, Acting United States Trustee, Plaintiff,**

v.

**Glenn Lee Thompson, Heike Birgit Thompson, Defendants.**

**CASE NUMBER 11–11192–WHD ADVERSARY PROCEEDING NO. 15–1016–WHD**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed November 16, 2016

Thomas Wayne Dworschak, R. Jeneane Treace, Office of the United States Trustee, Atlanta, GA, for Plaintiff.

584

J. Nevin Smith, Smith Conerly LLP, Carrollton, GA, for Defendant.

## IN PROCEEDINGS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

## <u>ORDER</u>

W. Homer Drake, U.S. Bankruptcy Court Judge

Before the Court is the Motion for Summary Judgment filed by Glenn Lee Thompson and Heike Birgit Thompson (hereinafter the "Debtors") in the above-styled adversary proceeding. The Debtors' motion arises in connection with the complaint filed by Guy G. Gebhardt (hereinafter the "U.S. Trustee"), Acting United States Trustee, seeking to revoke the Debtors' discharge. This is a core proceeding, see 28 U.S.C. § 157(b)(2)(J), over which this Court has subject matter jurisdiction, see 28 U.S.C. § 157(a), 1334.

### Procedural Background

On April 3, 2011, the Debtors filed a voluntary petition under Chapter 13. At the Debtors' request, the case was converted to Chapter 11 on September 1, 2011. On July 10, 2013, again at the Debtors' request, the case was converted to Chapter 7. The Debtors received their Chapter 7 discharge on February 26, 2016.

██ At the time the Debtors filed their petition, they owned two businesses: Nattco, LLC (hereinafter "Nattco") and GHT United, LLC (hereinafter "GHT"). Nattco owned and operated a self-storage rental facility and was a U–haul neighborhood dealership. (Defs.' Statement of Material Facts, Doc. No. 58, at ¶ 5). The Debtor-wife served as president. (See Petition, Case No. 11–12883–whd, Doc. No. 1, at 3).[1] GHT was a construction company owned by the Debtor-husband. (See Statement of Financial Affairs, Case No. 11–11192–whd, Doc. No. 1, at 7). On September 1, 2011, Nattco filed its own voluntary petition under Chapter 11. In that case, the Court confirmed a plan on September 6, 2013, and the case was closed on March 24, 2015.

On February 25, 2015, after conducting an investigation that will be discussed in further detail below, the U.S. Trustee filed the complaint initiating the instant adversary proceeding. In the complaint, the Trustee states that he identified "errors in and omissions from" the reports the Debtors produced in their own case and in the Nattco case, as well as "discrepancies in certain business and financial records maintained and produced by the [Debtors] and Nattco." (Complaint, Doc. No. 1, at ¶ 24). These discrepancies led the U.S. Trustee to conclude that the financial reports[2] the Debtors submitted in their case and in the Nattco case were "incomplete, inaccurate, or erroneous." (Id. at ¶ 33). The U.S. Trustee alleges that the Debtors, in their own case and in the Nattco case, have done the following: concealed property of the estate; failed to report the acquisition of property of the estate; made one or more false oaths or accounts; concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information from which their own and Nattco's financial condition and business transactions could be ascertained; and failed to satisfactorily explain the discrepancies identified by the U.S. Trustee. (Id. at ¶¶ 27–32). The U.S. Trustee maintains that

1. The Court takes judicial notice of the filings in the Debtors' bankruptcy case and in the bankruptcy case of Nattco. See generally In re Anderson, 130 B.R. 497, 500 (Bankr. W.D. Mich. 1991) (citing Fed. R. Evid. 201).

2. See generally Fed. R. Bankr. P. 2015(a).

the Debtors obtained their discharge through fraud, and that he was unaware of this fraud until after the discharge was entered. (*See id.* at ¶¶ 34–35). Based on these allegations, the U.S. Trustee seeks the revocation of the Debtors' discharge pursuant to § 727(d), and organizes his complaint into four counts: (I) Concealment of Property of the Estate; (II) Failure to Preserve Records; (III) False Oath or Account; and (IV) Failure to Report Estate Property.

The Debtors filed their motion for summary judgment on September 12, 2016. The motion contains four bases for granting summary judgment: (1) The U.S. Trustee's claims are barred because the U.S. Trustee was on notice of the Debtors' allegedly fraudulent conduct before the discharge was entered; (2) The U.S. Trustee is attempting to assert new claims outside of the statute of limitations; (3) The Debtors' conduct in the Nattco case cannot be used as a basis for revoking the Debtors' individual discharge; and (4) The U.S. Trustee cannot meet its burden of proof on Count II concerning the failure to keep or preserve records. On October 6, 2016, the U.S. Trustee filed his response. On October 21, 2016, the Debtors filed a reply to the U.S. Trustee's response.[3] The Court, having reviewed these filings and the documents the parties have filed in support of their positions, concludes as set out below.

## Discussion

### A. Summary Judgment Standard and Principles

Rule 56 of the Federal Rules of Civil Procedure provides that "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056. Under this rule, "[t]he moving party bears the initial burden to show . . ., by reference to materials on file, that there are no genuine issues of material fact. . . ." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *accord First Nat'l Bank of Griffin v. Wyatt–Frizzell (In re Frizzell)*, 2006 WL 6589889, at *2 (Bankr. N.D. Ga. Aug. 8, 2006) (Drake, J.) ("The movant must point to the pleadings, discovery responses or supporting affidavits which tend to show the absence of a genuine issue of material fact."). Once the movant meets this burden, it shifts to the non-movant "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

It is important to note that the rule calls for the entry of summary judgment only in situations in which there is "no *genuine* issue of *material* fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)

---

**3.** In their reply brief, the Debtors request that the Court disregard portions of the U.S. Trustee's response because it exceeds twenty-five pages, in contravention of Local Rule 7007–1(e). *See* BLR 7007–1(e) ("[B]riefs filed in support of a motion or in response to a motion are limited in length to 25 pages."). The Court has the authority to waive this rule, or even ignore its violation. *See* BLR 7007–1(h) ("The Bankruptcy Court, in its discretion, *may* decline to consider any motion or brief that fails to conform to the requirements of these Rules." (emphasis added)). The U.S.

Trustee's brief, as filed on October 6, 2016, was thirty-five pages long. On November 10, 2016, the U.S. Trustee filed a reformatted brief in which the font size, margins, and line spacing were altered to reduce the length to twenty-five pages. (U.S. Trustee's Reformatted Resp., Doc. No. 83). Pretermitting whether such reformatting and resubmitting is allowed, the Court will consider the Trustee's brief, as originally filed, in its entirety. However, the Court informs the Trustee that it may not be so forgiving in the future.

("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). A dispute is *genuine* in the summary-judgment context when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505; *accord Philadelphia Indem. Ins. Co. v. Manitou Constr., Inc.,* 2015 WL 3904557, at *3, 115 F.Supp.3d 1378 (N.D. Ga. June 25, 2015). A fact is *material* if it "might have an effect on the outcome of a proceeding under the governing substantive law." *Kidd v. Student Loan Xpress, Inc. (In re Kidd),* 2012 WL 1820816, at *2 (Bankr. N.D. Ga. Apr. 2, 2012) (Diehl, J.) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). Consequently, it follows that "[a]n evidentiary difference as to an immaterial matter will not bar a summary judgment," *Robbins v. Gould,* 278 F.2d 116, 119 (5th Cir. 1960), but "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

To aid in the resolution of motions for summary judgment, this Court has a local rule that requires the movant on a motion for summary judgment "to attach to the motion a separate and concise statement of material facts...as to which the movant contends no genuine issue exists to be tried." BLR 7056–1(a)(1). The rule also requires non-movants to respond with "a separate and concise statement of material facts...as to which the [non-movant] contends a genuine issue exists to be tried." BLR 7056–1(a)(2). Additionally, the non-movant is required to respond to each of the movant's facts, and any fact not "specifically controverted...shall be admitted." *Id.*; *see also In re Frizzell,* 2006 WL 6589889, at *1 (deeming the movant's facts to be admitted, but not considering "any statements of issues or conclusions of law made by the [movant]").

This local rule is important in resolving the motion currently before the Court, as the U.S. Trustee has only directly controverted *some* of the Debtors' facts. (*See,* United States Trustee's Objection to Defendants' Statement of Material Facts, Doc. No. 65, at ¶ 1).[4] Therefore, the Court shall deem as admitted those facts to which the U.S. Trustee does not specifically object. Nevertheless, as the Court is required to do when considering a motion for summary judgment, the Court shall still view all the facts, admitted or merely presented, in the light most favorable to the non-movant. *See Chavez v. Mercantil Commercebank, N.A.,* 701 F.3d 896, 899 (11th Cir. 2012); *Bank of N. Ga. v. McDowell (In re McDowell),* 497 B.R. 363, 368 (Bankr. N.D. Ga. 2013) (Drake, J.); *In re Frizzell,* 2006 WL 6589889, at *2.

With these guiding principles in mind, the Court turns to the substantive issues raised by the Debtors' motion.

## B. Are the U.S. Trustee's Claims Barred Due to Pre–Discharge Notice?

The Debtors argue that the Court should grant summary judgment because the U.S. Trustee had knowledge of the Debtors' allegedly fraudulent conduct before the discharge was entered, and, therefore, the U.S. Trustee cannot pursue the revocation of their discharge pursuant to § 727(d).

---

4. The U.S Trustee objects to the following enumerated facts in the Debtors' statement: 11, 14, 15, 20, 21, 24, 25, 28, 29, 31, 35, 36, 37, 38, 39, 40, 41, 42, 45, 50, and 52. (United States Trustee's Objection to Defendants' Statement of Material Facts, Doc. No. 65, at ¶ 1).

Section 727(d) of the Bankruptcy Code allows for the revocation of a Chapter 7 discharge in two scenarios relevant to this proceeding: (1) when "such discharge was obtained through the fraud of the debtor, and the [party requesting the revocation of the discharge] did not know of such fraud until after the granting of such discharge;" and (2) when "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee...." 11 U.S.C. § 727(d)(1)–(2).[5] The Court will consider the applicability of each of these statutes in turn.

*1. Section 727(d)(1)*

 On its face, paragraph (1) of subsection (d) requires that the party seeking revocation of the debtor's discharge obtain knowledge of the fraudulent activity only after the entry of the discharge. 11 U.S.C. § 727(d)(1); *see also The Cadle Co. v.*

*Parks–Matos (In re Matos)*, 267 Fed. Appx. 884, 887 (11th Cir. 2008) (per curiam); *Hopkins v. Kribs (In re Kribs)*, 523 B.R. 830, 836 (Bankr. D. Idaho 2015); *Walton v. Paul (In re Paul)*, 2012 WL 4894581, at *3 (Bankr. N.D. Ga. Aug. 20, 2012) (Drake, J.). A party seeking revocation has "knowledge," as that term is used in relation to § 727(d)(1), when the party "knows facts such that he or she is put on notice of a possible fraud." *See Mid–Tech Consulting, Inc. v. Swendra*, 938 F.2d 885, 888 (8th Cir. 1991); *accord 421 Chestnut Partners, LP v. Aloia (In re Aloia)*, 496 B.R. 366, 381 (Bankr. E.D. Penn. 2013); *In re Paul*, 2012 WL 4894581, at *4. The party seeking revocation has the burden of showing his lack of knowledge. *See In re Paul*, 2012 WL 4894581, at *4; *see also Mid–Tech Consulting*, 938 F.2d at 888.

In the instant proceeding, this means that the U.S. Trustee must prove that he had no knowledge of a possible fraud before the Debtors received their discharge on February 26, 2014.[6] To address this

---

**5.** Section 727(d) contains two other justifications for revoking a debtor's discharge, but they are not applicable here. *See* 11 U.S.C. § 727(d)(3)–(4).

**6.** Prior to 2011, determining whether a plaintiff had knowledge of fraudulent conduct before the discharge was complicated by the presence of a "gap period." Federal Rule of Bankruptcy Procedure 4004 sets a deadline for objecting to the debtor's discharge sixty days from the first date set for the meeting of creditors. Fed. R. Bankr. P. 4004(a). If no objections are filed by that date, the rule instructs courts to "forthwith grant the discharge" if otherwise appropriate. Fed. R. Bankr. P. 4004(c)(1). In practice, however, administrative delays often cause a "gap period" between the expiration of the time to object and the actual entry of discharge. *See e.g., Walton v. Staub (In re Staub)*, 208 B.R. 602, 603 (Bankr. S.D. Ga. 1997) (discussing case where deadline to object to discharge was November 13th, but the discharge was not entered until November 29th). Courts

struggled with the issue of whether a party that obtains knowledge of fraudulent activity within this "gap period" obtained that knowledge "after the granting" of the discharge. *See generally The Lincoln Nat'l Life Ins. Co. v. Silver (In re Silver)*, 367 B.R. 795, 821–22 (Bankr. D.N.M. 2007) (concluding that a creditor that acquires knowledge during the gap period is barred from seeking to revoke discharge under § 727(d)(1)); *In re Staub*, 208 B.R. at 606–07 ("When a discharge is not entered 'forthwith' after the expiration of the FRBP 4004(a) period and until discharge is actually entered...a party may properly file a complaint under § 727(d) to revoke the discharge for conduct occurring prior to the expiration of the FRBP 4004(a) period which the party did not discover in time to file a complaint under § 727(a)."); 6 Collier on Bankruptcy ¶ 727.17[4] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (discussing court-created exception accommodating gap-period knowledge). As a solution to the "gap period" problem, Rule 4004(b) was amended in 2011 to allow a party to request an exten-

issue, the Court must embark on an analysis of the U.S. Trustee's investigation into the Debtors' alleged conduct and determine what the U.S. Trustee knew and when he knew it.

### a.—The Fraud Referral and Pre–Discharge Investigation

On October 23, 2013, Debra Brannon, a former employee of Nattco, sent an email to the United States Trustee Program. (*See* Ennever Dep. vol. 1, Doc. No. 62, at 19:1–10). In the email, Ms. Brannon alleged that the Debtor-wife "grossly misrepresented the amount of income taken in since filing bankruptcy" because she was "hiding cash income" received by Nattco. (Defs.' Statement of Material Facts, Doc. No. 58, at ¶ 26). The email also alleged that the Debtors were "stockpiling cash," taking trips to Hawaii, Puerto Rico, and Florida, and that the Debtor-wife had undergone plastic surgery. (*Id.*). On October 28, 2016—the last day to object to the Debtors' receipt of a discharge under Rule 4004(a)—Ms. Brannon sent a fax providing documentation supporting her claims concerning the misrepresentation of cash. (*Id.* at ¶ 27). Ms. Brannon submitted two documents labeled "Management Summary," one showing Nattco records for December of 2012, the other covering August of 2013. (*See* Brannon Dep., Doc. No. 61, at 115:14–121:5, Defs.' Ex. 3). The total monthly income stated in those summaries varied markedly from the reports Nattco had filed with the Court. For December of 2012, the "Management Summary" showed approximately $2,000 more income than the Monthly Report. For August of 2013, the difference was close to $5,000. (*Compare* Dec. 2012 Monthly Operating Report, Case No. 11–12883–whd, Doc. No. 76, at 2, *and* Aug. 2013 Monthly Operating Report, Case No. 11–12883–whd, Doc. No. 112, at 2, *with* Brannon Dep., Doc. No. 61, Defs.' Ex. 3).

On November 12, 2013, Ms. Brannon emailed Jeneane Treace, an attorney with the U.S. Trustee's office, concerning Ms. Brannon's allegations against the Debtors. (Defs.' Statement of Material Facts, Doc. No. 58, at ¶ 30). During this exchange, Ms. Brannon made a new allegation that the Debtors had "gutted the massive home they bankrupted on" and had taken "chandeliers, cabinets, woodwork, sod, plants, [and] whatever they could take" to their new home. (*Id.*). On December 20, 2013, Ms. Brannon emailed Randal Ennever, the analyst assigned to the case. (*Id.* at ¶ 33). In that email, Ms. Brannon referenced both the Nattco case and the Debtors' individual case and reiterated that "[a]n audit of any given month will verify that [the Debtor-wife's cash reports] are all fabricated." (*Id.* (first alteration in original)).

On December 10, 2013, Ms. Treace sent an email to Lisa Lofton, who represented Nattco in its bankruptcy case and the Debtors in their individual case. (Exs. to U.S. Trustee's Resp., Doc. No. 67–1, at 28). In that email, which congratulated Ms. Loftin on having Nattco's Chapter 11 plan confirmed, the U.S. Trustee requested various documents from Nattco, including profit and loss statements, bank deposit slips, and copies of tax returns. (*Id.*).

On January 15, 2014, Ms. Loftin replied to Ms. Treace's request. (*Id.* at 31). In that

sion of time to object to discharge during this "gap period" if the party "did not have knowledge of [the facts that would provide a basis for denial of the discharge] in time to permit an objection." *See* Fed. R. Bankr. P. 4004(b)(2). Here, the U.S Trustee never requested such an extension. Therefore, the U.S. Trustee must show that he did not have knowledge of the Debtors' allegedly fraudulent activity before the date the discharge was actually entered—February 26, 2014.

response, Ms. Loftin forwarded an email from the Debtor-wife asserting that Ms. Brannon had been fired in October of 2013 for theft. (*Id.*). The Debtor-wife stated that Ms. Brannon had boasted about "turn[ing] [the Debtor-wife] in for fraud to the US Attorney," and that Ms. Brannon had been arrested for theft on December 21, 2013. (*Id.* at 31–32). As a result of this "trying" experience, the Debtor-wife expressed "concerns" about producing the documents Ms. Treace requested. (*See id.*).

On January 22, 2014, the Debtor-wife produced certain documents, but they were not the ones Ms. Treace had requested. (*See id.* at 34). On January 26, 2014, Ms. Brannon emailed Mr. Ennever reiterating that the Debtor-wife had "hidden a great deal of cash proceeds from the bankruptcy court since filing for bankruptcy protection." (Defs.' Statement of Material Facts, Doc. No. 58, at ¶ 34). A month later, on February 26, 2014, the Debtors' received their discharge in their individual case. (Order Discharging Debtor and Closing Estate, Case No. 11–11192–whd, Doc. No. 169).

### b. Post–Discharge Investigation and Adversary Proceeding

After the entry of the discharge, the U.S. Trustee's investigation went on. In March and April of 2014, the U.S. Trustee was in contact with Ms. Loftin and the Debtor-wife concerning document production in the Nattco case. (*See* Exs. to U.S. Trustee's Resp., Doc. No. 67–1, at 71–84). On April 9, 2014, the U.S. Trustee filed an objection to Nattco's request for a final decree in its Chapter 11 case, noting the fraud referral and ongoing investigation. (U.S. Trustee's Resp. to Debtor's Application for Final Decree, Case No. 11–12883–whd, Doc. No. 119). On May 1, 2014, the U.S. Trustee met with Ms. Brannon. (Defs.' Statement of Material Facts, Doc.

No. 58, at ¶ 43). On May 14, 2016, Ms. Treace reached out to counsel for Wells Fargo, the Debtors' mortgage lender, to investigate Ms. Brannon's claim that the Debtors had stripped their property of valuable fixtures. (*See* Exs. to U.S. Trustee's Resp., Doc. No. 67–1, at 211). On June 3, 2014, counsel for Wells Fargo replied to Ms. Treace, informing her that the property never went into foreclosure, nor had there been reports of damage. (*Id.* at 215).

On September 12, 2014, the U.S. Trustee conducted a 2004 examination of the Debtor-wife. (Heike Thompson 2004 Exam., Case No. 11–12883–whd, Doc. No. 212). In that examination, the Debtor-wife stated that she "hoarded" some of Nattco's cash receipts and did not deposit the cash into the corporate account. (*Id.* at 38:13–39:11). On September 23, 2014, Ms. Loftin emailed Ms. Treace, stating that the Debtors' trip to Hawaii in 2012 was paid for out of Nattco's account, but that account was reimbursed with income from the Debtor-husband. (Exs. to U.S. Trustee's Resp., Doc. No. 67–1, at 157–58).

On February 25, 2015, the U.S. Trustee filed the complaint initiating the instant adversary proceeding, and the investigation continued in the form of discovery. (Complaint, Doc. No. 1). On December 8, 2015, the Debtors deposed Ms. Brannon, with Ms. Treace present. (Brannon Dep., Doc. No. 61). At the deposition, Ms. Brannon elaborated on her claim that the Debtors had "gutted" their house by removing fixtures and other valuables. (*See id.* at 112:1–11). Subsequently, Ms. Treace reached out to a representative of Delta Community Credit Union, which had filed a proof of claim in the Debtors' individual case, suspecting that the "gutted" house was not the one the Debtors listed on their schedules (hereinafter the "Timber Ridge Property"), but that it was another proper-

ty (hereinafter the "Platinum Ridge Property"). (Exs. to U.S. Trustee's Resp., Doc. No. 67–1, at 218; *see also* Claim 18–1, Case No. 11–11192–whd).

On April 12, 2016, the U.S. Trustee deposed David Dunlap, a former employee of GHT, who occasionally worked for Nattco. (*See* Dunlap Dep., Doc. No. 68, at 7:3–13). In the course of that deposition, Mr. Dunlap confirmed the U.S. Trustee's suspicions, stating that he had seen "U–Haul loads of things that were being brought" from the Platinum Ridge Property to the Timber Ridge Property. (*Id.* at 12:10–13:3). That same day, the U.S. Trustee took the deposition of the Debtor-husband, who denied that he or his wife had taken fixtures from the Platinum Ridge Property. (Glenn Thompson Dep., Doc. No. 77, at 42:12–25). The Debtor-husband did admit, however, to owning several assets that were not scheduled in the Debtors' case, including SCUBA gear, a boat, firearms and hunting equipment. (*Id.* at 49:4–52:21). When the U.S. Trustee deposed the Debtor-husband again on August 5, 2016, he admitted to taking fixtures from the Platinum Ridge Property to install at the Timber Ridge Property. (*See* Glenn Thompson Dep., Doc. No. 76, at 87:10–25).

### c. Analysis

■ Viewing all of the foregoing facts concerning the investigation of the Debtors' conduct in the light most favorable to the U.S. Trustee, the Court concludes that there is no genuine issue of material fact as to whether the U.S. Trustee had pre-discharge knowledge of most of the Debtors' allegedly fraudulent conduct. Consequently, the Debtors are entitled to partial summary judgment.

The evidence presented through the Debtors' Statement of Material Facts, the depositions, and indeed the U.S. Trustee's own brief in opposition to the instant motion show that the U.S. Trustee was sufficiently aware of the possibility of fraudulent activity before the discharge was entered. The evidence shows that the initial fraud referral was made on October 23, 2013. Ms. Brannon then made contact with the U.S. Trustee's office numerous times throughout October, November, and December, reiterating the allegations she made in her initial referral and asserting new allegations. Indeed, the evidence shows that as early as October 28, 2013, the U.S. Trustee was in possession of documents purporting to show serious discrepancies between Nattco's accounts and its filings with the Court. Additionally, Ms. Brannon's allegation concerning the "gutted" house, which was made in November of 2013, combined with Delta Community Credit Union's deficiency claim, which was filed on August 9, 2011, should have put the U.S. Trustee on notice regarding the potential fraud concerning the Platinum Ridge Property as well. Having been given all of this information before the entry of the discharge, the U.S. Trustee cannot say that he was not on notice of potential fraud before the discharge was entered on February 26, 2014.

■ In his response to the Debtors' motion, the U.S. Trustee intimates that he was unsure of the information he was receiving from Ms. Brannon because she had been recently fired by the Debtor-wife and was arrested for theft. (U.S. Trustee's Resp., Doc. No. 67, at 19). The U.S. Trustee also argues that, as a result of the Debtors' intransigence in providing information, he "did not know whether Nattco received cash, who had handled Nattco's cash receipts (if any), or how much cash Nattco might have received (i.e., whether it was a material amount)." (*Id.*). These arguments for how the U.S. Trustee did not "know" that there was fraud going on

would be efficacious if the lack-of-knowledge requirement of § 727(d)(1) entailed the use of a strict, dictionary definition of "know." *See generally know*, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed.) ("[T]o apprehend clearly and with certainty. . . ."). However, § 727(d)(1) places a much greater burden on parties objecting to discharge. Rather than simply showing that he was not *certain* that fraud was occurring, a plaintiff must show that he was not aware of facts that would suggest even *possible* fraud. *See In re Aloia*, 496 B.R. at 381 (noting that a revocation action under § 727(d)(1) is barred if the plaintiff had "any information" suggesting a possible fraud).[7] Here, the evidence presented in conjunction with the Debtors' motion compels the conclusion that the U.S. Trustee, who bears the burden of proving his lack of awareness, was aware of facts concerning the hoarding of cash, misstatements on the financial reports, and the gutted property before the entry of the discharge. Accordingly, there is no evidence in the record creating a genuine issue of fact concerning that knowledge. Therefore, the Debtors are entitled to summary judgment concerning the U.S. Trustee's claims under subsection (d)(1) arising from the fraud referral.[8]

■ Nevertheless, the Court cannot conclude that the U.S. Trustee had knowledge of *all* of the Debtors' alleged fraudulent conduct prior to the discharge. Ms. Brannon's fraud referral and the investigation that occurred from October to February concerned the Debtors' alleged hording of cash, misstatements on the financial reports to the Court, and the "gutting" of the Platinum Ridge Property. It did not reference the Debtors failure to schedule the Debtor-husband's personal property. That issue does not appear to have arisen until the Debtor-husband's deposition on April 12, 2016. Viewing the evidence presented on the instant motion in the light most favorable to the U.S. Trustee, the Court concludes that there is a question of fact as to whether the U.S. Trustee had pre-discharge knowledge, within the meaning of § 727(d)(1), of the failure of the Debtors to schedule various pieces of property owned by the Debtor-husband, including the SCUBA gear, boat, firearms, and hunting equipment. Consequently, summary judgment on that point is not appropriate.

7. Indeed, applying a strict definition would render the lack-of-knowledge requirement meaningless. Except in the unlikely scenario in which a debtor would openly admit his fraud, no party can ever be *certain* that fraud has been committed until the trier of fact confirms it through an often fact-intensive inquiry. *See generally Household Credit Servs., Inc. v. Ettell (In re Ettell)*, 188 F.3d 1141, 1145 (9th Cir. 1999) ("Because fraud lurks in the shadows, it must usually be brought to light by consideration of circumstantial evidence."). Thus, every plaintiff could claim that he did not "know" of the fraud before the discharge, and the lack-of-knowledge requirement would limit no one. Therefore, it is appropriate to apply a meaning that makes the requirement's limitation effective. *See United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (choosing an interpretation of a statute that would not "emasculate an entire section").

8. Furthermore, if the Trustee had wanted more time to consider the veracity of Ms. Brannon's allegations or to extract information from the uncooperative Debtors, the solution was to file a motion to extend the deadline to object to discharge, as allowed by Rule 4004(b). Though it was not guaranteed that such an extension would have been granted, making a motion under that rule, rather than waiting to file a complaint until after the discharge was entered, would have been the better course in this case. *See In re Kribs*, 523 B.R. at 837–38 (discussing the options for a party to seek extensions of time to object to discharge and noting how those options narrow the range of cases in which revocation is appropriate).

**592**

*2. Section 727(d)(2)*

In their initial brief in support of their motion, the Debtors argued that the U.S. Trustee's claims under § 727(d)(2) are likewise barred due to pre-discharge knowledge. However, in their reply brief to the U.S. Trustee's response, the Debtors assert that the U.S. Trustee is not making a claim under § 727(d)(2). In support of this assertion, the Debtors cite to the portion of the U.S. Trustee's response entitled "Applicable Bankruptcy Statutes and Rules." In that section, the U.S. Trustee refers only to § 727(d)(1) and several paragraphs of § 727(a). (*See* U.S. Trustee's Resp., Doc. No. 67, at 4–5).

Despite this omission from the U.S. Trustee's response, the Court finds that the U.S. Trustee is asserting a claim under § 727(d)(2). Section 727(d)(2) allows the revocation of a discharge in situations in which "the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition or entitlement to such property." 11 U.S.C. § 727(d)(2). Looking to the U.S. Trustee's complaint, there is a clear reference to this statute at paragraph 8:

> Bankruptcy Code section 727(d) provides that, on request of the United States Trustee, the Court shall revoke a debtor's discharge if the debtor acquired property that is property of the estate or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition or entitlement to such property.

(Complaint, Doc. No. 1, at ¶ 8). As one can see from comparing this excerpt from the complaint with the statutory language quoted above, it is almost verbatim. Admittedly, the U.S. Trustee cited simply to § 727(d), but the intention to reference

subsection (d)(2) is plain. *See generally Howell v. Martin Financial, LLC (In re Martin)*, 532 B.R. 859, 863 (Bankr. N.D. Ga. 2015) (Drake, J.) (concluding that potentially citing the wrong code section was not a problem, as the plaintiff would be able to amend his complaint if the court ultimately determined that he had cited to the wrong code section). Additionally, Count IV of the U.S. Trustee's complaint contains an allegation that falls within subsection (d)(2)'s scope: "The [Debtors] obtained their discharge through fraud by failing to report property of the estate acquired during the pendency of their Bankruptcy Case." (Complaint, Doc. No. 1, at ¶ 53). Regardless of any omission in his response to the Debtors' motion, the U.S. Trustee is manifestly asserting a claim under § 727(d)(2). *See generally Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Having concluded that the U.S. Trustee is asserting a claim under § 727(d)(2), it is necessary to address the Debtors' assertion that the U.S. Trustee's claim is barred due to his pre-discharge knowledge.

Unlike paragraph (1) of subsection (d), paragraph (2) does not contain a facial requirement that the plaintiff lack pre-discharge knowledge of the debtor's bad conduct. Instead, the statute breaks down into a fairly simple three-part test: (1) the debtor acquired (or became entitled to acquire) property of the estate, (2) the debtor failed to report this acquisition (or entitlement), and (3) the debtor's failure to so report was knowing and fraudulent. *See* 11 U.S.C. § 727(d)(2).

Nevertheless, the Debtors argue that a lack-of-knowledge requirement ought to be read into the statute. In support of their argument, the Debtors cite to *Humphreys*

*v. Stedham (In re Stedham)*, 327 B.R. 889 (Bankr. W.D. Tenn. 2005), in which the court concluded that a creditor with pre-discharge knowledge of the debtor's failure to report assets was precluded from requesting the revocation of the debtor's discharge under § 727(d)(2). *Id.* at 906. While the court in *Stedham* recognized that § 727(d)(2) did not contain a lack-of-knowledge requirement, it read such a requirement into the statute anyway, citing concerns that to not do so would render § 727(a)(2), which allows the denial of a discharge if a debtor conceals assets, superfluous. *Id.* The court also feared that "[a]ny other result would open up an avenue for creditors to harass debtors and subject them to unending costs and headaches." *Id.* at 906–07. Other courts considering § 727(d)(2) have similarly added a pre-discharge lack-of-knowledge element. *See* 6 COLLIER, *supra* note 3, at ¶ 727.17[4] & n.14 ("[I]t has been held that a party's predischarge knowledge of the debtor's wrongdoing under § 727(d)(2) will effectively estop that party from seeking revocation of the discharge."). This Court, however, disagrees.

■ First, reading a knowledge requirement into § 727(d)(2) is an unnecessary departure from the unambiguous language of the statute. Where the meaning of a statute is plain and unambiguous, a court's inquiry into that meaning ought to stop except "in rare and exceptional circumstances." *See Rubin v. U.S.*, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981) (internal quotation marks omitted) (quoting *TVA v. Hill*, 437 U.S. 153, 187 n.33, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978)). There is no ambiguity in § 727(d)(2), so the Court will not read words into the statute that are not there. Furthermore, as there is a lack-of-knowledge requirement plainly stated in paragraph (1) of subsection (d), it is apparent that if Congress had

wanted a similar provision in paragraph (2), it could have included one. *See Colombo Bank, FSB v. Barnes (In re Barnes)*, 348 B.R. 613, 616 (Bankr. D.D.C. 2006) (declining to apply a lack-of-knowledge requirement to claim under § 727(d)(3)); *see also McCarthy v. Nandalall (In re Nandalall)*, 434 B.R. 258, 268 (Bankr. N.D.N.Y. 2010) (noting that a knowledge requirement "is conspicuously absent from § 727(d)(2)"). It chose not to, and it is not the courts' place to second guess that decision.

Second, the Court rejects the argument that applying § 727(d)(2) without a lack-of-knowledge requirement renders § 727(a)(2) superfluous. Section 727(a)(2) allows for the denial of the discharge in situations in which the debtor, with fraudulent intent, "has transferred, removed, destroyed, mutilated, or concealed" his own property prior to the filing of the petition or property of the estate after the filing of the petition. *See* 11 U.S.C. § 727(a)(2). Certainly subsections (a)(2) and (d)(2) overlap, but they are different in one key way. Under § 727(a)(2), a debtor can be *denied* a discharge for fraudulently concealing property of the estate. Under § 727(d)(2), a debtor can have his discharge *revoked* only if he *acquired* property of the estate during his case *and* fraudulently failed to report that acquisition.

Also, to the extent that the statutes do overlap, it is not absurd to suppose that Congress decided that fraudulently failing to report the acquisition of property of the estate post-petition was a bad enough act to warrant both denial of the discharge, if raised before the discharge was entered, or revocation of the discharge, if raised afterward. Indeed, such an interpretation is eminently reasonable when one considers the purpose of a Chapter 7 case: the orderly liquidation and distribution of a debtor's assets by a trustee. *See* 11 U.S.C.

§ 704(a)(1). Failing to report the acquisition of assets would seriously hinder a Chapter 7 trustee in the exercise of his duty, and would constitute a cardinal sin against the bankruptcy system. Thus, it is not surprising that Congress would provide multiple avenues to punish, and in that way deter, such conduct.

Finally, the Court is unmoved by the "equitable" argument for inserting a lack-of-knowledge requirement into the statute—that to fail to do so will, as the court in *Stedham* feared, open up the debtor to never-ending assaults on his discharge. The Court rejects this argument for two reasons: one theoretical, one practical. On the theoretical level, the judiciary's "province is to decide what the law is, not to declare what it should be." *Minor v. Happersett*, 88 U.S. 21 Wall. 162, 178, 22 L.Ed. 627 (1874); *see also Marbury v. Madison*, 5 U.S. 1 Cranch 137, 177, 2 L.Ed. 60 (1803). If Congress, which represents the interests of the people of this Republic and in whom the power to legislate is vested, issues a law that unambiguously requires an outcome that is not absurd, it is not the duty of the courts to decide that they ought to have passed a different law. *See generally* U.S. CONST. art I.

On a more practical level, fears that debtors will be subjected to never-ending assaults on their discharges are unwarranted. Section 727(e)(2) expressly provides that a complaint to revoke a debtor's discharge pursuant to § 727(d)(2) must be brought "before the later of—(A) one year after the granting of such discharge; and (B) the date the case is closed." 11 U.S.C. § 727(e)(2). Of course, a Chapter 7 case may remain open for a long time after a discharge is entered, but that time is not infinite. *See generally* 11 U.S.C. § 350(a) (directing courts to close cases "[a]fter an estate is fully administered"). In any event, the ability to bring a suit to revoke discharge for failing to disclose the acquisition of property of the estate is hardly a Sword of Damocles. If a debtor is blameless, but creditors file frivolous suits, a debtor may dispose of them easily enough by motion, and may potentially seek sanctions pursuant to Rule 9011. *See* Fed. R. Bankr. P. 7012, 7056, 9011. Such inconvenience is not patently unfair, particularly as the discharge is supposed to be available only to the "honest but unfortunate debtor." *Sherman v. Proyect (In re Proyect)*, 503 B.R. 765, 771 (Bankr. N.D. Ga. 2013) (Sacca, J.) (quoting *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

The Court finds no reason to impose a lack-of-knowledge requirement in a situation in which Congress has deemed one unnecessary. Consequently, the U.S. Trustee may proceed on his claim under § 727(d)(2) despite his pre-discharge knowledge of the Debtors' alleged fraudulent activity.

## C. Is the U.S. Trustee Asserting New Claims, and, If So, Do Those Claims Relate Back?

The Debtors' second argument in support of their motion is that the U.S. Trustee is attempting to assert new claims, that is, claims not asserted in the U.S. Trustee's complaint. The Debtors' argue that the complaint is based on the Debtors' failure to disclose income, but the U.S. Trustee is now seeking to revoke the Debtors' discharge due to the non-disclosure of the Debtor-husband's personal property and the fixtures taken from the Platinum Ridge Property. Even if the U.S. Trustee is allowed to continue with this *de facto* amendment to his complaint, the Debtors assert that these claims would not relate back to the filing of the original complaint. As the deadline to file such claims has

passed, these claims would thus be barred. In response, the U.S. Trustee points to his complaint, in which he alleges that the Debtors "concealed property of the estate in their Bankruptcy Case." (Complaint, Doc. No. 1, at ¶ 29).

■■■ Before proceeding to analyze this question, the Court notes that based on its analysis in section C.1.c., above, any claim under § 727(d)(1) concerning the fraudulent concealment of the fixtures from the Platinum Ridge Property is barred due to the U.S. Trustee's pre-discharge knowledge of that potential fraud. However, also based on the above analysis, there is at least a question of fact concerning the U.S. Trustee's knowledge of the Debtor-husband's personal property. Therefore, the Court will focus its analysis here on that claim only.

### 1. Is this a new claim?

As an initial matter, the Court concludes that the U.S. Trustee's claim regarding the Debtor-husband's personal property is a "new claim." The allegations in the U.S. Trustee's complaint focus exclusively on allegations of the filing of monthly reports with missing information and the failure to report cash income. This "new" allegation deals with the concealment of various pieces of personal property that should have been reported on the Debtors' schedules. At most, it is tangential to the issues in the complaint. While they all fall under the broad umbrella of "fraudulent conduct" or "concealment of assets," they are not the same claim.

### 2. Do these claims relate back?

The fact that this is a new claim does not, on its own, prevent the U.S. Trustee from bringing it, as the U.S. Trustee could always request permission to amend his complaint. See Fed. R. Civ. P. 15(a)(2); see also Fed. R. Bankr. P. 7015. The issue,

however, is that the time to file a complaint asserting a claim under § 727(d)(1) has long since passed. See 11 U.S.C. § 727(e)(1) (requiring complaints filed under § 727(d)(1) to be filed within one year of the granting of the discharge). Therefore, amending the complaint to include this claim would only be worthwhile if the amendment would "relate back" to the date the original complaint was filed. See Davenport v. United States, 217 F.3d 1341, 1344 (11th Cir. 2000) (" 'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed.").

■■■ Federal Rule of Civil Procedure 15 governs amendments to complaints and their relation back. See Fed. R. Civ. P. 15. Subsection (c) of that rule provides three scenarios in which an amended complaint will relate back to the filing date of the original complaint, only one of which is applicable here: "(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading. . . ." Fed. R. Civ. P. 15(c). The Eleventh Circuit has held that in order for an amended complaint to relate back, "[t]he untimely claim must have arisen from the 'same set of facts' as the timely filed claim, not from separate conduct or a separate occurrence in 'both time and type.' " Farris v. United States, 333 F.3d 1211, 1215 (11th Cir. 2003) (quoting Davenport, 217 F.3d at 1344).

Here, the U.S. Trustee argues that his generic assertion in the complaint that the Debtors have "concealed property" is enough to implicate the Debtor-husband's failure to schedule all of his personal property. This sort of blanket statement is not sufficient to anchor that new claim with the original claims concerning the concealment of cash income.

In reaching this conclusion, the Court finds a precedential case from the Fifth Circuit, *Solove v. Chase Manhattan Bank*, 388 F.2d 874 (5th Cir. 1968), instructive. *See generally Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (announcing that the decisions of the Fifth Circuit through September 30, 1981, "shall be binding precedent in the Eleventh Circuit"). In that case, the creditors seeking to revoke the debtors' discharge originally alleged that the debtor-husband "falsely 'testified under oath that he was not going into the wig business whereas...he was then actively engaged in the wig business'" and that the debtor-wife had "knowingly and fraudulently omitted to list in her schedules stock owned by her." *Solove*, 388 F.2d at 875 (alteration in original). Two months later, the creditors filed a motion to amend their complaint. *Id.* In the proposed amended complaint, the creditors "alleged (1) that [the debtor-husband] 'fraudulently testified he was not currently employed, whereas, in truth and in fact, he was then currently employed'; (2) that [the debtors] fraudulently omitted from their schedules of assets a debt in the amount of $10,000 owed [to the debtor-husband]." *Id.*

On appeal, the Fifth Circuit concluded that the new allegations did not relate back to the original complaint. *Id.* at 879. Even though both the original complaint and the amended complaint alleged the failure to schedule an asset, the Fifth Circuit determined that the allegation that the debtors omitted the $10,000 debt was "not referred to in the original petition expressly or by implication." *Id.* Concerning the debtor-husband's testimony, the court acknowledged that both statements alleged fraud on the part of the debtor-husband, but there was "a sufficiently different factual basis set out in the amendment." *Id.* The court expressed concern that a more lax definition would mean that "once fraud

is alleged originally there could never exist a 'new ground' for revocation." *Id.*

The instant case presents a similar situation. Though the U.S. Trustee does allege concealment generally in his original complaint, the specifics in the complaint focus exclusively on the concealment of cash income. Never was there even an assertion that the Debtors failed to list all of their assets on their schedules. Consequently, this claim would not relate back, and, thus, it would be futile to allow the U.S. Trustee to pursue it.

## D. Can the Court Consider the Debtors' Alleged Misconduct in the Nattco Case in Relation to the Revocation of Their Individual Discharge?

The Debtors assert that their conduct in the Nattco case cannot be used as a ground for revoking the discharge received in their individual case. As the Court has now determined that the U.S. Trustee cannot proceed on any of his claims under § 727(d)(1), the Court will address this argument particularly as it relates to the U.S. Trustee's claim under § 727(d)(2).

In response to the Debtors' argument, the U.S. Trustee relies on § 727(a)(7) for the proposition that a debtor's conduct in a corporate case can be grounds for denying the debtor's discharge in its individual case. Section 727(a)(7) provides that a discharge may be *denied* to a debtor who commits certain acts in connection with the bankruptcy case of an insider. 11 U.S.C. § 727(a)(7). The U.S. Trustee asserts that § 727(a)(7) can be used to *revoke* a discharge as well as deny it.

The U.S. Trustee is mistaken. While § 727(a)(7) can certainly be grounds to deny a discharge (that is, a complaint may be brought under § 727(a)(7) *before* the discharge is entered), it is not grounds to revoke it. As discussed above, a discharge may only be revoked pursuant to § 727(d),

and no paragraph of that section discusses bad acts in the course of other debtors' cases. Paragraph (d)(1) requires that the debtor obtain *the discharge sought to be revoked* by fraud. *See* 11 U.S.C. § 727(d)(1). Bad acts in another bankruptcy case do not necessarily mean that the debtor obtained his own discharge fraudulently. Likewise, paragraph (d)(2) concerns the fraudulent failure to report the acquisition of property of the estate. *See* 11 U.S.C. § 727(d)(2). It would be a very strained reading of that paragraph to conclude that it meant *any* bankruptcy estate, and not just the debtor's own. *See generally All Points Capital Corp. v. Stancil (In re Stancil)*, 2012 WL 4116505, at *2 (Bankr. E.D.N.C. Sept. 18, 2012) ("Because the debtor did not engage in postpetition conduct in connection with his own individual chapter 7 case prohibited by § 727(d)(2), the court cannot revoke his discharge.").

Therefore, to the extent that the U.S. Trustee's claim under § 727(d)(2) is based on the Debtors' conduct in the Nattco case, it is not valid and is subject to summary judgment.

### E. Can the U.S. Trustee Meet Its Burden of Proof on Count II (Failure to Preserve Records)?

Due to the Court's conclusion that the U.S. Trustee's claims asserted pursuant to § 727(d)(1) are either barred due to the U.S. Trustee's pre-discharge knowledge or by the passage of the statute of limitations, this argument is moot.

### Conclusion

Based on the foregoing, the Debtors' motion is hereby **GRANTED IN PART AND DENIED IN PART**.

Summary judgment is **GRANTED** for the Debtors as to Counts I, II, and III of the U.S. Trustee's complaint. Additionally, summary judgment is **GRANTED** for the Debtors as to Count IV to the extent that Count IV alleges that the Debtors failed to report income in the Nattco case.

Summary judgment is **DENIED** as to Count IV to the extent that it alleges that the Debtors acquired property of the estate in their individual case and fraudulently failed to report that acquisition.

The Clerk is **DIRECTED** to serve this Order on all parties, respective counsel, and the Chapter 7 trustee assigned to the Debtors' case.